# IN THE SUPREME COURT OF TEXAS

════════════

No. 13-0768

════════════

BCCA APPEAL GROUP, INC., PETITIONER,

v.

CITY OF HOUSTON, TEXAS, RESPONDENT

═══════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS

═══════════════════════════════════════════════════

**Argued September 2, 2015**

JUSTICE GREEN delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE JOHNSON, JUSTICE WILLETT, JUSTICE GUZMAN, JUSTICE LEHRMANN, JUSTICE DEVINE, and JUSTICE BROWN joined, and in which Justice Boyd joined as to Parts III(B) and IV.

JUSTICE BOYD filed an opinion dissenting in part.

We must decide whether the Texas Clean Air Act (the Act) and the Act's enforcement mechanisms in the Texas Water Code preempt a Houston air-quality ordinance, and whether the Houston ordinance can incorporate Texas Commission on Environmental Quality (TCEQ) rules in their current form and as amended in the future. Because the Houston ordinance's enforcement provisions are inconsistent with the statutory enforcement requirements, and the ordinance's registration requirement makes unlawful what the Act approves, we reverse the judgment of the court of appeals as to preemption and render judgment for BCCA Appeal Group. However, we

conclude that the ordinance's incorporation of TCEQ rules does not violate the nondelegation doctrine of the Texas Constitution and affirm the judgment of the court of appeals in that regard.

## I. Background

In 1967, the Texas Legislature enacted the Act, which is now codified as Texas Health and Safety Code Chapter 382. TEX. HEALTH & SAFETY CODE §§ 382.001–.510. The Act empowers the TCEQ to administer and enforce the Act. *Id.* § 382.011; TEX. WATER CODE §§ 5.001(2), .013(a)(11). To that end, the Legislature authorized the TCEQ to adopt rules for regulating air quality. TEX. HEALTH & SAFETY CODE § 382.017(a). The TCEQ has promulgated such rules. *See* 30 TEX. ADMIN. CODE §§ 1.1–351.104.

Houston is a home-rule city. *See, e.g.*, *S. Crushed Concrete, LLC v. City of Hous.*, 398 S.W.3d 676, 678 (Tex. 2013). In 1992, the City of Houston enacted an air-quality ordinance to regulate air pollution from facilities that were not already regulated under the Act. HOUSTON, TEX., ORDINANCE 1992-180 (Feb. 19, 1992) (codified as Ordinance § 21-164). Initially, the City contracted and cooperated with the TCEQ to ensure that TCEQ-permitted emissions sources within the City's borders complied with state law. The City inspected emissions sources, referred enforcement cases to the TCEQ, and pursued civil enforcement pursuant to the Water Code. *See* TEX. WATER CODE § 7.351–.360. The City's contract with the TCEQ ended in 2005, as did its cooperative arrangement with the TCEQ, because the City desired to enforce the Act and TCEQ rules on its own "due to what it perceive[d] to be TCEQ's lax enforcement efforts."[1] ___S.W.3d___,

---

[1] *See also* Ryan Hackney, *Note: Don't Mess with Houston, Texas: The Clean Air Act and State/Local Preemption*, 88 TEX. L. REV. 639, 647 (2010) (quoting Editorial, *Protecting Their Own: Industry Group's Lawsuit Is Latest Effort to Undercut Houston's Enforcement of Clean Air Regulations*, HOUS. CHRON. (Mar. 23, 2008),

2

___ (Tex. App—Houston [1st Dist.] 2013, pet. granted). In 2007, the City amended the 1992 ordinance to establish its own air-quality regulatory-compliance program and adopted a fee schedule to fund the program. HOUSTON, TEX., ORDINANCE 2007-208 (Feb. 14, 2007) (amending Chapter 21 of the Code of Ordinances). The 2007 amendment expanded the 1992 ordinance's scope to include the regulation of facilities and sources subject to TCEQ regulation under the Act and made it "unlawful" to operate a facility inside the City's borders unless the facility was registered with the City. HOUSTON, TEX., CODE OF ORDINANCES ch. 21, art. VI, div. 2, § 21-162(a) (2007). Furthermore, the 2007 amendment incorporated specific TCEQ rules promulgated pursuant to the Act, rather than referring to "air pollution control laws and regulations" generally, as it had previously. *Id.* § 21-164(a). Section 21-164, as amended in 2007, states that certain TCEQ rules are incorporated "as they currently are and as they may be changed from time to time." *Id.*

BCCA Appeal Group members operate integrated chemical manufacturing plants and refineries in the Houston area. Those plants are extensively regulated by the TCEQ pursuant to the Act. *See* TEX. HEALTH & SAFETY CODE §§ 382.011, .023, .051–.059. In February 2008, BCCA Appeal Group filed suit seeking a declaratory judgment that the 2007 amendment is invalid and unenforceable under the Act, the Water Code, and the Texas Constitution.[2] BCCA Appeal Group also sought an injunction against the 2007 amendment's enforcement. On May 7, 2008, while the

http://www.chron.com/opinion/editorials/article/Protecting-their-own-Industry-group-s-lawsuit-is-1665173.php) (noting that, in explaining the City's enactment of the ordinance, the Houston mayor said he would "applaud state and federal regulation if it occurred," but without such regulation, "the city needs to take the actions that it can to protect its citizens").

[2] Three BCCA Appeal Group members are subject to the ordinance. The trial court concluded that BCCA Appeal Group has standing to challenge the Ordinance. That ruling was not appealed. ___ S.W.3d at ___ n.3.

suit was pending, the City passed an additional amendment to the air-quality ordinance, providing that a violation of the incorporated TCEQ rules "shall be unlawful."[3] HOUSTON, TEX., ORDINANCE 2008-414 (May 7, 2008). Such violation would be prosecuted in municipal court,[4] with fines between $250 and $2,000 per day of violation. *Id.* § 21-164(c), (e), (f). Furthermore, the 2008 amendment made it an "affirmative defense to prosecution under this section that the prosecuted condition or activity has been: (1) Approved or authorized by the Act, state rule or state order; and (2) That the facility is in compliance with any such approval or authorization." *Id.* § 21-164(d). BCCA Appeal Group amended its suit to include a challenge to the 2008 amendment. We refer to the 2007 and 2008 amendments collectively as "the Ordinance."

BCCA Appeal Group and the City filed cross motions for traditional summary judgment. In March 2011, the trial court granted BCCA Appeal Group's motion and denied the City's motion, concluding that the Ordinance violates the Texas Constitution, is preempted by the Act, and is therefore unenforceable. As a result, the trial court granted BCCA Appeal Group's request for an injunction, enjoining the City from enforcing the Ordinance.

The court of appeals reversed the trial court's judgment and rendered judgment in favor of the City, concluding that the Ordinance was consistent with the Act and the Water Code and that the

---

[3] The 2008 amendment replaced the earlier sentence, "Civil, administrative and criminal sanctions imposed by law shall be pursued where violations are determined to exist," with the statement, "It shall be unlawful for any person to operate or cause to be operated any facility that does not comply with [state air pollution control laws]." *Compare* HOUSTON, TEX., ORDINANCE 2007-208, § 21-164(b), *with* HOUSTON, TEX., ORDINANCE 2008-414, § 21-164(c).

[4] While the Houston air-quality ordinance does not use the term "municipal court," City guidance documents posted on the City's websites confirm that violations will be prosecuted in municipal court. *See Draft FAQ About the Changes to the City of Houston Air Pollution Abatement Program and Registration Ordinance*, CITY OF HOU. OFFICE OF SUSTAINABILITY, www.greenhoustontx.gov/pdf/ordinance-registration-faq.doc; *Mandated Responsibilities*, HOUS. DEP'T OF HEALTH & HUMAN SERVS. 7 (2014), http://www.houstontx.gov/health/ Mandated_Responsibilities.pdf.

4

Ordinance did not violate the nondelegation doctrine of the Texas Constitution by incorporating TCEQ rules in such a way as to include future amendments. ___S.W.3d at ___. In this Court, BCCA Appeal Group asserts the same arguments as it did at the trial court regarding preemption and nondelegation. We first address whether the Ordinance is preempted by the Act and the Water Code. Subsequently, we address the nondelegation doctrine of the Texas Constitution and the Ordinance's incorporation of TCEQ rules.

## II. Standard of Review

"When both parties move for summary judgment and the trial court grants one motion and denies the other, as here, we review both sides' summary judgment evidence and render the judgment the trial court should have rendered." *S. Crushed Concrete, LLC*, 398 S.W.3d at 678. Traditional summary judgment is proper when the movant establishes that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c).

### A. Powers of a Home-Rule Municipality

Home-rule cities possess the power of self-government and look to the Legislature not for grants of authority, but only for limitations on their authority. TEX. LOC. GOV'T CODE § 51.072(a); *Dall. Merch.'s & Concessionaire's Ass'n v. City of Dall.*, 852 S.W.2d 489, 490–91 (Tex. 1993). The Texas Constitution mandates that no city ordinance "shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." TEX. CONST. art. XI, § 5(a). Therefore, a home-rule city's ordinance is unenforceable to the extent that it is inconsistent with the state statute preempting that particular subject matter. *Dall. Merch.'s &*

5

*Concessionaire's Ass'n*, 852 S.W.2d at 491. "Of course, a general law and a city ordinance will not be held repugnant to each other if any other reasonable construction leaving both in effect can be reached. In other words, both will be enforced if that be possible under any reasonable construction . . . ." *City of Beaumont v. Fall*, 291 S.W. 202, 206 (Tex. 1927). Furthermore, "[t]he entry of the state into a field of legislation . . . does not automatically preempt that field from city regulation; local regulation, ancillary to and in harmony with the general scope and purpose of the state enactment, is acceptable." *City of Brookside Vill. v. Comeau*, 633 S.W.2d 790, 796 (Tex. 1982).

BCCA Appeal Group argues that the Ordinance is expressly preempted by section 382.113(b) of the Act and implicitly preempted by the comprehensive structure of the Act and its Water Code enforcement provisions. In *Lower Colorado River Authority v. City of San Marcos*, we stated that "[a] limitation on the power of home rule cities by general law . . . may be either an express limitation or one arising by implication," but we have never delineated the distinction between the two. 523 S.W.2d 641, 645 (Tex. 1975). Instead, we focus on whether the Legislature's intent to provide a limitation appears with "unmistakable clarity."[5]  *See, e.g., Dall. Merch.'s &*

---

[5] Federal preemption analysis similarly turns on legislative intent. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992).

> State law may be preempted in three ways: (1) expressly, by a federal law specifically preempting state law; (2) impliedly, by the scope of a federal law or regulation indicating Congress intended the federal law or regulation to exclusively occupy the field; or (3) impliedly, by the state law conflicting with a federal law or regulation to the extent it is impossible to comply with both or by the state law obstructing Congress's objectives as reflected by the federal law.

*BIC Pen Corp. v. Carter*, 346 S.W.3d 533, 537 (Tex. 2011). While federal preemption law provides more fully developed standards for analysis of express and implied preemption, federal preemption is a distinct body of case law that this Court has not directly relied on when analyzing whether a statute preempts a city's ordinance.

*Concessionaire's Ass'n*, 852 S.W.2d at 491, 494 (stating "if the Legislature chooses to preempt a subject matter . . . it must do so with unmistakable clarity," and concluding "the express language of [the statute] compels this court to give effect to the Legislature's clear intent—the Ordinance is preempted"); *Tyra v. City of Hous.*, 822 S.W.2d 626, 628 (Tex. 1991) (stating "the [L]egislature must express its intent [to withdraw a subject from a home-rule city's domain] in clear and unmistakable language," and concluding "[t]he language of [the statute] is both clear and unmistakable"). Because the critical inquiry in determining whether an ordinance is preempted is whether the Legislature expressed its preemptive intent through clear and unmistakable language, we begin with statutory construction analysis. *See* TEX. CONST. art. XI, § 5(a); *Dall. Merch.'s & Concessionaire's Ass'n*, 852 S.W.2d at 491.

### B. Statutory Construction

We review statutory construction de novo. *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389 (Tex. 2014). "In construing statutes our primary objective is to give effect to the Legislature's intent." *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). We initially look to the plain meaning of the text as the sole expression of legislative intent, "unless the Legislature has supplied a different meaning by definition, a different meaning is apparent from the context, or applying the plain meaning would lead to absurd results." *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 46 (Tex. 2015) (citing *Tex. Lottery Comm'n*, 325 S.W.3d at 635).

7

## III. Ordinance Preemption

BCCA Appeal Group contends that the following parts of the Ordinance are preempted: (1) the Ordinance's enforcement mechanism in section 21-164(c) through (f); and (2) the Ordinance's registration requirement, the corresponding fee, and the definition of a "facility," which establishes who must register. *See* HOUSTON, TEX., CODE OF ORDINANCES, § 21-161(a) ("facility"), -162, -163, -164(c)–(f), -166. The Ordinance is preempted only to the extent that it is inconsistent with state law. *Dall. Merch.'s & Concessionaire's Ass'n*, 852 S.W.2d at 492. Furthermore, "[w]hen an ordinance contains an express severability clause, the severability clause prevails when interpreting the ordinance." *City of Hous. v. Bates*, 406 S.W.3d 539, 549 (Tex. 2013) (citing TEX. GOV'T CODE § 311.032(a), which states: "If any statute contains a provision for severability, that provision prevails in interpreting that statute."). The Ordinance contains an express severability clause.[6] Therefore, any provisions that are preempted do not affect the validity of the remaining portions of the Ordinance or any other ordinances. HOUSTON, TEX., CODE OF ORDINANCES ch. 1, § 1-8; *see Bates*, 406 S.W.3d at 549.

---

[6] The Ordinance's severability clause states:

> The sections, paragraphs, sentences, clauses and phrases of this Code are severable, and if any phrase, clause, sentence, paragraph or section of this Code shall be declared unconstitutional by the valid judgment or decree of any court of competent jurisdiction, such unconstitutionality shall not affect any of the remaining phrases, clauses, sentences, paragraphs and sections of this Code.

HOUSTON, TEX., CODE OF ORDINANCES ch. 1, § 1-8.

## A. Enforcement Mechanisms

BCCA Appeal Group asserts that the Act and the Water Code lay out a comprehensive enforcement regime, endow the TCEQ with substantial statewide authority and discretion, and specifically address how cities may participate in enforcement. BCCA Appeal Group argues that the Ordinance's parallel enforcement mechanism is inconsistent and thus preempted. We agree.

### 1. The Statutory Regime

The Act and Chapter 7 of the Water Code operate together to provide the enforcement mechanisms for a violation of the Act, TCEQ rule, order, or permit at both the state and local government levels. The Act provides:

> (a) [A] municipality has the powers and rights as are otherwise vested by law in the municipality to:
>
>> (1) abate a nuisance; and
>>
>> (2) *enact and enforce* an ordinance for the control and abatement of air pollution, or any other ordinance, *not inconsistent with this chapter or the commission's rules or orders*.
>
> (b) An ordinance enacted by a municipality must be *consistent* with this chapter and the commission's rules and orders . . . .

TEX. HEALTH & SAFETY CODE § 382.113 (emphasis added).[7] Thus, the Act expressly recognizes a municipality's power to enact and enforce an ordinance, but such an ordinance cannot be inconsistent with the statutory provisions or TCEQ rules or orders. *Id.* In analyzing the statutory provisions for

---

[7] The Water Code defines "Commission" as the Texas Natural Resource Conservation Commission (TNRCC), but TNRCC's name was changed to TCEQ as part of the agency's 2001 sunset review. *See* TEX. WATER CODE § 7.001(1); Act of May 28, 2001, 77th Leg., R.S., ch. 965, § 18.01, 2001 Tex. Gen. Laws 1985; *see FPL Farming Ltd. v. Envtl. Processing Sys., L.C.*, 351 S.W.3d 306, 308 n.2 (Tex. 2011).

our preemption analysis, we look to the Act itself as well as Chapter 7 of the Water Code, which establishes how the Act is enforced. *See* TEX. HEALTH & SAFETY CODE § 382.011; TEX. WATER CODE § 7.002 (providing that "[t]he [TCEQ] may initiate an action under this chapter to enforce provisions of this code and the Health and Safety Code [which encompasses the Act]"). We must determine whether the Act and the Water Code reflect unmistakably clear legislative intent to limit the City's authority to enact an ordinance to enforce the state air-quality standards and, if so, whether the Ordinance's enforcement provisions are inconsistent with the statutory provisions. *See* TEX. CONST. art. XI, § 5(a) (providing that no city ordinance "shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State"); *Lower Colo. River Auth.*, 523 S.W.2d at 645 (quoting *City of Sweetwater v. Geron*, 380 S.W.2d 550, 552 (Tex. 1964), which states: "The intention of the Legislature to impose such limitations must 'appear with unmistakable clarity.'").

Chapter 7 of the Water Code provides that the TCEQ may pursue violations of the Act, TCEQ rules or orders, or a TCEQ-issued permit by assessing administrative penalties or authorizing a civil or criminal action. TEX. WATER CODE §§ 7.002, .051, .073, .101–.102, .105, .203. In each circumstance, the TCEQ is afforded great discretion to evaluate the violation and determine the appropriate penalty or remedy. *Id.* §§ 7.002, .053, .203; *see* TEX. HEALTH & SAFETY CODE § 382.025(a) ("If the [TCEQ] determines that air pollution exists, the [TCEQ] may order any action indicated by the circumstances to control the condition."). The Legislature has charged the TCEQ with the responsibility for administering the Act and has given the TCEQ "the powers necessary or convenient to carry out its responsibilities." TEX. HEALTH & SAFETY CODE § 382.011(c).

10

Furthermore, as Governor Greg Abbott explained in his amicus brief, the TCEQ often seeks voluntary remediation and compliance without referring the alleged violation to the TCEQ's enforcement division, which can be the most effective way to achieve remediation and long-term compliance.

The TCEQ may, on its own accord, seek civil remedies through an action brought by the attorney general. *See* TEX. WATER CODE § 7.002 (TCEQ enforcement authority); *id.* §§ 7.101–.111 ("Subchapter D: Civil Penalties"). Alternatively, in a subchapter titled "Suit by Others," the Water Code authorizes a local government, though its own attorney, to institute a civil suit in district court for injunctive relief, civil penalty, or both, against a person who committed a violation. *Id.* § 7.351. To do so, the local government's governing body must first adopt a resolution authorizing the exercise of this power, and the TCEQ must be joined as a "necessary and indispensable party." *Id.* §§ 7.352–.353. The Legislature thus allows a city to bring an action while still ensuring the TCEQ's involvement in the civil enforcement proceedings.[8]

If a municipality has not instituted a lawsuit under the above provisions, the TCEQ may assess an administrative penalty against the person who violated the Act, a TCEQ rule or order, or a permit issued by the TCEQ under the Act. *Id.* § 7.051(a). Section 7.073 of the Water Code states: "If a person violates any statute or rule within the [TCEQ's] jurisdiction, the [TCEQ] may: (1) assess

---

[8] Local governments, such as the City, may also participate in enforcement through entering a public or private property to inspect air emissions and sharing the results of its inspections with the TCEQ when the TCEQ requests such information; entering into cooperative agreements with the TCEQ or other local governments for the performance of air-quality management, inspection, enforcement, technical aid, and education and to transfer money for any of those purposes; making recommendations to the TCEQ and petitioning the agency for rulemaking; and appealing a ruling, order, decision, or other act of the TCEQ by filing a petition in the district court of Travis County. TEX. HEALTH & SAFETY CODE §§ 382.032(a), .0622(d), 111, .112, .115. The City's prior contract with the TCEQ included these functions.

against the person an administrative penalty under this subchapter; and (2) order the person to take corrective action." *Id.* § 7.073. The TCEQ may conduct a hearing and, by order, may: (1) find that a violation has occurred and assess a penalty; (2) find that a violation has occurred but that a penalty should not be assessed; or (3) find that no violation has occurred. *Id.* § 7.058; *See* TEX. HEALTH & SAFETY CODE § 382.023(b). Therefore, the TCEQ need not assess a penalty, even if it finds a violation. In determining whether a penalty should be assessed, the TCEQ must consider factors that include the nature, circumstances, extent, and gravity of the prohibited act; the history and extent of previous violations; the degree of culpability of the alleged violator; the demonstrated good faith of the alleged violator; the economic benefit gained through the violation; the amount necessary to deter future violations; and "*any other matters that justice may require.*" TEX. WATER CODE §§ 7.053 (emphasis added), .058. In classifying a site's compliance history, the TCEQ's executive director categorizes violations as of major, moderate, or minor significance. 30 TEX. ADMIN. CODE § 60.2(a), (d). A "major violation" includes "any violation included in a criminal conviction, which required the prosecutor to prove a culpable mental state or a level of intent to secure the conviction." *Id.* § 60.2(d)(1)(E). Thus, the TCEQ has the authority to determine whether a violation has in fact occurred and the discretion to decide whether that violation warrants an administrative penalty, considering various factors, including prior criminal history. If the TCEQ assesses an administrative penalty, payment of such penalty "is full and complete satisfaction of the violation for which the penalty is assessed and precludes any other civil or criminal penalty for the same violation." TEX. WATER CODE § 7.068. In that instance, no other action can be sustained against the violator. *See id.* In summary, a local government may institute a civil suit in accordance with the statute, but if

it does not and the TCEQ assesses an administrative penalty, the local government is precluded from any further action. *See id.* §§ 7.051(a), .068.

Regarding criminal enforcement, the Water Code provides that "[a] person commits an offense if the person intentionally or knowingly, with respect to the person's conduct, violates" various air permitting statutes or "an order, permit, or exemption issued or a rule adopted under [the Act, in] Chapter 382, Health and Safety Code." *Id.* § 7.177(a); *see id.* § 7.203 (relating to criminal prosecution of a permit-holder's alleged violation of the Act, TCEQ rules promulgated under the Act, or TCEQ orders or permits); § 7.001(2) (defining "permit" to include a "license, certificate, registration, approval, or other form of authorization"). Each day of such conduct constitutes a separate offense, and such offenses are punishable by specific fines or confinement periods, as imposed under the statutes creating the offense. *Id.* §§ 7.186, .187(a). Before a peace officer may refer an alleged violation to a prosecuting attorney, the peace officer "shall notify the [TCEQ] in writing of the alleged criminal environmental violation and include with the notification a report describing the facts and circumstances of the alleged criminal environmental violation." *Id.* § 7.203(b); *see* TEX. CODE CRIM. PROC. art. 2.12 (defining "peace officers"). As soon as practicable and no later than forty-five days after receiving that notice, the TCEQ "shall evaluate the report and determine whether an alleged environmental violation exists and whether administrative or civil remedies would adequately and appropriately address the alleged environmental violation." TEX. WATER CODE § 7.203(c). In deciding whether administrative or civil remedies would be appropriate, the TCEQ shall consider the factors listed in section 7.053 of the Water Code. *Id.* §§ 7.053, .203. If the TCEQ determines that civil or administrative remedies are appropriate, the TCEQ shall

13

provide written notice to the peace officer "that the alleged environmental violation is to be resolved through administrative or civil means by the appropriate authorities." *Id.* § 7.203(d). If the TCEQ does not make a determination in forty-five days, or determines that an alleged violation exists and administrative or civil remedies are inadequate or inappropriate and provides notice to the peace office recommending criminal prosecution, only then may the prosecuting attorney proceed with criminal prosecution against the permit-holder. *Id.* § 7.203(c), (d) ("A prosecuting attorney may not prosecute an alleged violation if the [TCEQ] determines that administrative or civil remedies are adequate and appropriate."). Thus, the statute mandates administrative and civil remedies whenever possible, and the TCEQ is charged with the discretion to make that determination before any criminal proceeding may move forward. *See id.*

## 2. The Ordinance

The Ordinance incorporates by reference the TCEQ's regulatory standards adopted pursuant to the Act. HOUSTON, TEX., CODE OF ORDINANCES ch. 21, art. VI, div. 2, § 21-164(a). The Ordinance makes it "unlawful for any person to operate or cause to be operated any facility that does not comply with the requirements in [the incorporated TCEQ rules]" and mandates that a

> [v]iolation of this section shall be punishable upon first conviction by a fine of not less than $250.00 nor more than $1,000.00. If the violator has been previously convicted under this section, a violation of this section shall be punishable by a fine of not less than $1,000.00 nor more than $2,000.00.

*Id.* § 21-164(c), (e). Under the Houston municipal code, a culpable mental state is required to secure a conviction:

> When in this Code or in any ordinance of the city an act is . . . made or declared to be unlawful . . . , yet no culpable mental state is prescribed as an element necessary

14

for conviction of that unlawful act, then a person shall be considered to have committed an unlawful act if it can be shown that he acted with knowledge with respect to the nature of his conduct or to circumstances surrounding his conduct.

*Id.* § 1-6(b); *see* TEX. PENAL CODE § 6.02(f) ("An offense defined by municipal ordinance . . . may not dispense with the requirement of a culpable mental state if the offense is punishable by a fine exceeding [$500.00]."). The Ordinance thus treats any violation of the incorporated TCEQ rules as a criminal matter requiring a culpable mental state, to be resolved in municipal court.

### 3. Analysis

We must determine whether a legislative limitation on a home-rule municipality's power to enforce state air-quality standards by ordinance appears with "unmistakable clarity." *Lower Colo. River Auth.*, 523 S.W.2d at 645. To do so, we must ascertain the Legislature's intent, starting with the plain language of the statute and by viewing the statute as a whole, not just as specific provisions in isolation. *See Tyra*, 822 S.W.2d at 628 (analyzing plain language of the statute); *State v. Associated Metals & Minerals Corp.*, 635 S.W.2d 407, 410 (Tex. 1982) (reading the statute as a whole). In analyzing preemptive intent, we thus consider the Act together with the Water Code provisions for enforcement of the Act. *See* TEX. WATER CODE § 7.002 (providing that "[t]he [TCEQ] may initiate an action under this chapter to enforce provisions of this code and the Health and Safety Code [which encompasses the Act]"); *Associated Metals & Minerals Corp.*, 635 S.W.2d at 409–10 (reading the predecessor to the Act as a whole and concluding that the Legislature intended for the Texas Air Control Board—predecessor agency to the TCEQ—to have the sole authority to issue permits and set emission ceilings); *see also City of Weslaco v. Melton*, 308 S.W.2d 18, 19–20 (Tex. 1957) (explaining that "[t]he statute itself demonstrates the intention on the part of

15

the Legislature to provide for and establish grades of milk and specifications therefore as well as the labeling of the same to the end that uniformity shall prevail throughout the State"); *City of Brookside Vill.*, 633 S.W.2d at 796 (explaining that the referenced state and federal legislation preempted specific areas of regulation of mobile homes—construction, safety, and installation—but that local regulation "ancillary to and in harmony with the general scope and purpose of the state enactment, is acceptable," and therefore the ordinance regulating the location of mobile homes was not preempted). The Ordinance is unenforceable to the extent it is inconsistent and, therefore, preempted. *See* TEX. CONST. art. XI, § 5(a); *Dall. Merch.'s & Concessionaire's Ass'n*, 852 S.W.2d at 491.

The language of section 382.113 of the Act unmistakably expresses the Legislature's desire to preempt any ordinance "inconsistent" with the Act or with a TCEQ rule or order. TEX. HEALTH & SAFETY CODE § 382.113. That section provides that a "municipality has the powers and rights as are otherwise vested by law in the municipality to . . . enact and enforce an ordinance . . . *not inconsistent* with this chapter or the [TCEQ's] rules or orders," and "[a]n ordinance enacted by a municipality must be *consistent* with [the Act] and the [TCEQ's] rules and orders." *Id.* § 382.113(a)(2), (b) (emphasis added). Because the statute recognizes a municipality's "powers and rights as are otherwise vested by law," it does not grant municipalities any specific authority with regard to enacting or enforcing air pollution ordinances, and indeed the Legislature does not grant authority to home-rule cities but only limits home-rule cities' authority. *Id.* § 382.113(a); *see Dall. Merch.'s & Concessionaire's Ass'n*, 852 S.W.2d at 490–91. Section 382.113 does just that—it *limits* a municipality's power to enact air-quality ordinances to those that are consistent with the Act and

16

TCEQ rules and orders, and likewise *limits* a municipality's enforcement power to enforcement "not inconsistent with" the Act or TCEQ rules or orders. TEX. HEALTH & SAFETY CODE § 382.113(a)(2). Here, the Legislature has expressed its intent to limit a home-rule city's power in clear and unmistakable language. *See id.*; *Dall. Merch's & Concessionaire's Ass'n*, 852 S.W.2d at 491. Furthermore, when looking at the statutory regime as a whole, including the Water Code's enforcement provisions, the Legislature clearly limited a city's ability to enforce air-quality standards criminally, allowing such enforcement only when it is not inconsistent with the Water Code's requirements.

Our inquiry then is whether the Ordinance is inconsistent with the Act, TCEQ rules or orders, or the Water Code's enforcement of the Act. BCCA Appeal Group argues that the Ordinance's criminal enforcement provisions are inconsistent with the statutory requirements for criminal enforcement action under the Act. Each violation of air-quality standards under the Ordinance is also a violation covered by the Act, its enforcement provisions, and the TCEQ's rules. *See* TEX. WATER CODE §§ 7.177 (when a person commits an offense under the Act), .203(a) (TCEQ's criminal enforcement review is applicable to criminal prosecution of alleged environmental violations); 30 TEX. ADMIN. CODE §§ 1.1–351.104; HOUSTON, TEX., CODE OF ORDINANCES, § 21-164(a). Therefore, any enforcement of Ordinance violations is also subject to enforcement under state law. Water Code section 7.203 requires that a permit-holder's alleged violation must be reported in writing to the TCEQ before referral to a prosecuting attorney for criminal prosecution. TEX. WATER CODE § 7.203(b). The statute grants the TCEQ forty-five days to determine whether a violation actually exists and whether administrative or civil remedies would adequately and

17

appropriately address the violation instead of criminal prosecution. *Id.* § 7.203(c). A local government may proceed with criminal prosecution only if (1) the TCEQ makes no enforcement mechanism determination during those forty-five days, or (2) the TCEQ decides that administrative or civil remedies would not adequately and appropriately address the violation and issues written notice recommending criminal prosecution. *Id.* § 7.203(c)(1), (d). The Ordinance, in contrast, allows criminal prosecution of an alleged violation without requiring a written report to the TCEQ, without giving the TCEQ an opportunity to review the report and determine whether a violation in fact exists, and without allowing the TCEQ to exercise its discretion to determine whether administrative or civil remedies are appropriate. *See* HOUSTON, TEX., CODE OF ORDINANCES ch. 21, art. VI, div. 2, § 21-164 (c)–(f). Thus, the Ordinance converts what is primarily an administrative and civil enforcement regime under state law into a primarily criminal enforcement regime, removing primary enforcement authority from the agency that can ensure consistent enforcement across the state and placing that authority in the hands of the local health officer, city personnel, and municipal court judges. Although the Water Code allows local governments to bring civil suits for enforcement, requiring that TCEQ be joined as a party, the Ordinance ignores that enforcement authority and provides only for criminal enforcement without TCEQ involvement.

The City contends that the Ordinance's affirmative defense resolves this inconsistency. The Ordinance provides:

> It is an affirmative defense to prosecution under this section that the prosecuted condition or activity has been: (1) Approved or authorized by the Act, state rule or state order; and (2) That the facility is in compliance with any such approval or authorization under the Act, state rule or state order.

18

*Id.* § 21-164(d). This does not resolve the inconsistency for two reasons. First, the statute requires that the TCEQ be given the opportunity to decide whether criminal prosecution is the appropriate enforcement mechanism *before* prosecution, not as a defense to prosecution. *See* TEX. WATER CODE § 7.203(b). Second, the affirmative defense does not protect a facility from prosecution under the Ordinance when the TCEQ, if given the chance, determines that civil or administrative remedies would appropriately address the situation. *See id.* § 7.068 ("Payment of an administrative penalty . . . is full and complete satisfaction of the violation for which the penalty is assessed and precludes any other civil or criminal penalty for the same violation."). By authorizing criminal prosecution even when the TCEQ determines an administrative or civil remedy—or even no penalty at all—to be the appropriate remedy, the City effectively moots the TCEQ's discretion and the TCEQ's authority to select an enforcement mechanism. That is impermissible. *See S. Crushed Concrete, LLC*, 398 S.W.3d at 679 ("[T]he express language of section 382.11[3](b) compels us to give effect to the Legislature's clear intent that a city may not pass an ordinance that effectively moots a [TCEQ] decision."). And it stands in direct contravention to the Legislature's directive that "[a] prosecuting attorney may not prosecute an alleged violation if the [TCEQ] determines that administrative or civil remedies are adequate and appropriate." TEX. WATER CODE § 7.203(d).

Finally, prosecution under the Ordinance results in a "criminal conviction, which require[s] the prosecutor to prove a culpable mental state," therefore escalating the violation to a "major violation" in the site's compliance history. 30 TEX. ADMIN. CODE § 60.2(d)(1)(E); HOUSTON, TEX., CODE OF ORDINANCES, § 1-6(b). Such history must be taken into consideration when the TCEQ determines the appropriate course of action for any future violation, and a "major violation"

19

significantly escalates the penalty a site will receive. 30 TEX. ADMIN. CODE § 60.2(g)(1)(A). The Ordinance, therefore, thwarts the Legislature's intent that "uniformity shall prevail throughout the state." *See City of Weslaco*, 308 S.W.2d at 19–20.

Through the various provisions requiring the TCEQ to consider numerous factors relating to the circumstances of each violation, including any "matters that justice may require," the Legislature expressed its clear intent to have the TCEQ determine the appropriate remedy in every case. *See* TEX. WATER CODE §§ 7.053 (listing the factors the TCEQ must consider), .058 (requiring the TCEQ to consider the factors listed in section 7.053). Moreover, by giving the TCEQ discretion to determine whether administrative or civil remedies are adequate and appropriate to address a violation, the Legislature expressed its clear intent favoring consistent use of enforcement mechanisms across the state. *See id.* §§ 7.002, .051, .068, .203(d). The Ordinance is inconsistent with the legislative intent favoring statewide consistency in enforcement, which relies on TCEQ discretion to select an appropriate enforcement mechanism for each violation. *See id.* § 7.203(d). We conclude that the Ordinance's enforcement provisions, section 21-164(c) through (f), are inconsistent with the statutory requirements for criminal prosecution and the statutory scheme providing other enforcement options, and we therefore hold that the enforcement provisions of the Ordinance are preempted. *See* TEX. CONST. art. XI, § 5(a); TEX. HEALTH & SAFETY CODE § 382.113.

Because the statute authorizes civil penalties and states that "remedies . . . are cumulative," the City argues it is not precluded from enacting its own enforcement mechanisms in addition to the Water Code's enforcement provisions. *See* TEX. WATER CODE § 7.004. The City contends that "the

express provisions in the [Water Code] have [an] un-preemptive effect . . . [because] [r]ather than setting forth the 'exclusive remedy'. . . the [Water Code's] remedies are 'cumulative of all other remedies.'" The City correctly maintains, relying on Black's Law Dictionary, that a cumulative remedy is "a remedy available to a party in addition to another remedy that *still remains in force*." *Cumulative remedy*, BLACK'S LAW DICTIONARY 1485 (10th ed. 2014) (emphasis added); *see Union Cent. Life Ins. Co. v. Mann*, 158 S.W.2d 477, 481 (Tex. 1941) (concluding that "cumulative" does not destroy a legal right but is "in addition thereto"). The City is mistaken, however, in concluding that "remedies . . . are cumulative" essentially creates an exception to preemption law by "un-preempting" an ordinance regardless of its inconsistency with the Act and the Water Code. The use of "cumulative remedy" thus indicates that properly enacted existing law still remains in force. *See* BLACK'S LAW DICTIONARY at 1485; *see also Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) ("A statute is presumed to have been enacted by the [L]egislature with complete knowledge of the existing law and with reference to it."). Courts applying a statutory cumulative-remedies provision, such as the one here, have applied it in reference to laws existing at the time of the statute's enactment. *See, e.g.*, *Union Cent. Life Ins. Co.*, 158 S.W.2d at 481 (holding that the "protest statute's" use of the word "cumulative" means the statute is in addition to the existing right of reimbursement for taxes wrongfully demanded, not intended to destroy that legal right). We have not said, however, that a cumulative-remedies provision can save an otherwise inconsistent ordinance from preemption. We cannot conclude that section 7.004 acts as an exception to preemption analysis; rather, it evinces the legislative intent that then-existing laws or otherwise

lawfully created remedies are not abrogated by the Water Code provisions. *See* TEX. WATER CODE § 7.004.[9]

The City further argues that because the Water Code "does not exempt a person from complying with or being subject to other law," the City has both the authority to seek civil remedies as prescribed by the Water Code and the authority to enforce the Ordinance through criminal prosecution. *See* TEX. WATER CODE § 7.005. This section, however, cannot be read as a grant of authority to enact other laws that are inconsistent with the Act or the Water Code. It instead explains that conduct violating the Act may also violate a separate and distinct body of law (e.g., common law nuisance). Even conduct complying with the Act may still constitute a nuisance or violate some other law, such as a municipal ordinance, and the violator would not be exempt from a lawsuit based on another cause of action simply because he was complying with the Act.

The Legislature has expressly addressed a municipality's power to enforce air-quality standards, providing that "a municipality has the power and rights as are otherwise vested by law in the municipality to . . . enforce an ordinance for the control and abatement of air pollution . . . *not inconsistent with [the Act or the TCEQ's] rules or orders*." TEX. HEALTH & SAFETY CODE

---

[9] Two judicial opinions and one administrative opinion reference section 7.004. Each clarifies that previously-existing common law rights were not abrogated by the Water Code enforcement provisions. *See In re Discovery Operating, Inc.*, 216 S.W.3d 898, 903 (Tex. App.—Eastland 2007, orig. proceeding) (explaining that aggrieved parties have a right to bring suit and litigate their causes of action in an appropriate court because Water Code section 7.004 refers to "the right of a private corporation or individual to pursue any available common law remedy"); *Domel v. City of Georgetown*, 6 S.W.3d 349, 361 (Tex. App.—Austin 1999, pet. denied) (explaining that "section 7.004 of the Water Code merely clarifies that the Code does not take away from landowners their common-law remedies to enforce rights; it does not grant them additional rights"); *Application of Pilgrim's Pride Corp.*, No. 1999-0421-UIC, 2003 WL 25649069, at *40 (Tex. State Office of Admin. Hearings June 4, 2003) (explaining that the party claiming the wastewater injection would constitute a trespass or a nuisance must litigate those claims in court because "[s]uch common law rights are preserved, and an injection-well permit does not relieve a permittee of civil liability").

§ 382.113(a)(2) (emphasis added). Furthermore, the Constitution directs that no city ordinance "shall contain any provision inconsistent with . . . the general laws enacted by the Legislature of this State." TEX. CONST. art. XI, § 5(a). A municipality thus lacks power to enforce an air-quality ordinance inconsistently with the Act, TCEQ's rules or orders, or the Water Code's enforcement provisions. *See id.*; TEX. HEALTH & SAFETY CODE § 382.113. An ordinance that purports to grant a municipality such enforcement power cannot stand. The Ordinance in this case does just that by authorizing criminal prosecution without requiring notice to the TCEQ, without requiring that the TCEQ have forty-five days to determine whether a violation has occurred, and without regard to the TCEQ's discretion to determine whether criminal prosecution is the only adequate and appropriate remedy. Moreover, the Ordinance makes no provision for civil enforcement or enforcement through administrative remedies—mechanisms favored under the Act and TCEQ rules and orders. Because the Ordinance's enforcement provisions authorize the City to enforce the state's air-quality standards in a manner that is inconsistent with the statutory enforcement provisions, we conclude that those provisions of the Ordinance are preempted.

We are not persuaded by the City's argument that the inconsistency is resolved by the Ordinance's provision mandating cooperation. That provision requires the City health officer to

> conduct an effective program for the abatement of air pollution . . . [which] shall include . . . [c]ooperating with the city attorney and with county, state and federal officers, offices, departments and agencies in the filing and prosecution of legal actions for civil and criminal enforcement of air pollution and air quality standards law, rules and regulations.

HOUSTON, TEX., CODE OF ORDINANCES ch. 21, art. VI, div. 1, § 21-146(3). The cooperation mandate is directed only at the City health officer, requiring that person to cooperate in the enforcement of

23

violations. *See id.* But nowhere does the Ordinance require other city officials or city attorneys, who prosecute violations under the Ordinance, to cooperate with the TCEQ. *See id.* ch.2, art. VII, div. 1, § 2-258 (providing that the city attorney is charged with representing the City in "all actions and proceedings before any court"; thus, the city attorney prosecutes violations under the Ordinance). Such a promise of cooperation hardly remedies the Ordinance's authorization of criminal enforcement, which is directly at odds with the statutory requirement that a city prosecuting attorney allow the TCEQ to exercise its discretion to determine if other remedies are appropriate. *See* TEX. WATER CODE § 7.203(d) ("A prosecuting attorney may not prosecute an alleged violation if the [TCEQ] determines that administrative or civil remedies are adequate and appropriate.").

The dissent suggests that our construction of the Ordinance is unreasonable and contrary to our preemption precedent. We will hold an ordinance to be consistent with state laws if any "*reasonable* construction leaving both in effect can be reached." *Dall. Merch.'s & Concessionaire's Ass'n*, 852 S.W.2d at 491 (emphasis added). A construction that relies upon a city to opt out of the enforcement authority granted it under the ordinance—authority we hold is inconsistent with state law—is hardly reasonable, however. This is particularly true in a case such as this where, as the court of appeals recognized, the City enacted the Ordinance in response to a statutory scheme the City viewed as lax.[10] ___ S.W.3d at ___. We cannot rely on the City to decline to exercise its more

_____

[10] One commentator has noted:

[F]rustrated with delays in enforcement actions by the TCEQ after City monitors reported air pollution violations, the City amended its contract with the TCEQ so that it could independently bring suit for such violations. . . . In explaining why the City chose to enact the Ordinance, [the Mayor] said he would "applaud state and federal regulation if it occurred. But without that, the city needs to take the actions that it can to protect its citizens."

24

stringent enforcement authority under the Ordinance—the very reason the Ordinance exists—to find consistency between the Ordinance and the statutory enforcement scheme.

Furthermore, the dissent dismisses the legislative goal of statewide uniformity of enforcement, asserting that ordinances are not subject to field preemption based on state laws. The dissent relies on *City of Brookside Village* to conclude that field preemption does not apply and the crux of the issue is consistency, which can be achieved by allowing the City to enforce the Ordinance in a way that does not violate the statutory requirements. ___ S.W.3d at ___ (citing *City of Brookside Vill.*, 633 S.W.2d at 796). We explained in *City of Brookside Village* that local regulation is acceptable when the state has entered a field of legislation if the local regulation is "ancillary to and in harmony" with the state legislation. 633 S.W.2d at 796. That is not the case here. For the reasons explained above, the Ordinance is not in harmony with the comprehensive enforcement scheme under the Act and the Water Code. Nor is the Ordinance ancillary; instead, it attempts to circumvent the TCEQ's statutorily mandated discretion to allow more stringent enforcement of air-quality standards through criminal enforcement in municipal court.

Finally, the dissent would uphold the enforcement provisions of the Ordinance based on a limiting construction that would allow criminal prosecution only after the TCEQ receives proper notice and either fails to act in forty-five days or timely determines that a violation occurred and that administrative and civil remedies would be inadequate or inappropriate, resulting in a recommendation for criminal prosecution. ___ S.W.3d at ___. We have no quarrel with the

Hackney, *supra* note 1, at 639, 644, 647 (quoting Editorial, *supra* note 1).

25

dissent's call for enforcement of the state's air-quality standards consistent with state law, reserving criminal prosecution for cases in which the TCEQ has failed to act or has recommended criminal prosecution. *See* TEX. WATER CODE § 7.203(c), (d). But we disagree with the dissent's suggestion that we can save the Ordinance from preemption by reading language into the Ordinance that simply is not there. The dissent would have us invalidate the Ordinance only "to the extent" that it allows criminal prosecution inconsistent with the statutory safeguards for ensuring TCEQ discretion, essentially advocating for a rewrite of the Ordinance "to the extent" of that inconsistency. ___ S.W.3d at ___ (instructing that the City prosecutor can proceed with criminal prosecution under the Ordinance after the TCEQ receives proper notice and timely determines that administrative and civil remedies would be inadequate or inappropriate, or after the TCEQ failed to make such a determination within forty-five days). We find no legal support for the dissent's application of the "extent of" language to the Ordinance, however. *See City of Brookside Vill.*, 633 S.W.2d at 796 (explaining that no conflict existed between federal and state acts that "to an extent, preempted the field as to construction, safety, and installation of mobile homes" because the ordinance at issue regulated the *location* of mobile homes); *In re Sanchez*, 81 S.W.3d 794, 797 (Tex. 2002) (holding that no conflict existed between an Election Code statute that "expressly allows home-rule cities . . . to establish their own application requirements in municipal elections" and the ordinance at issue, which did just that); *Tex. Indus. Energy Consumers v. CenterPoint Energy Hous. Elec., LLC*, 324 S.W.3d 95, 102–03 (Tex. 2010) (explaining that prior case law, which relied on the agency's own severability rule, had invalidated a Public Utility Commission rule only as to the timing portion of the rule, not the interest rate portion of the rule). Never have we altered an

26

ordinance's applicability or reconstructed a city's authority under an ordinance in order to eliminate patent inconsistency. To the contrary, we have made clear that "an ordinance which conflicts or is inconsistent with state legislation is impermissible." *City of Brookside Vill.*, 633 S.W.2d at 796; *see City of Beaumont*, 291 S.W. at 206 (holding that an ordinance essentially and directly repugnant to state law "must fail"). We cannot invalidate the enforcement provisions of the Ordinance only "to the extent" that they will be inconsistent as utilized by the City; rather, having held that the enforcement authorized by the Ordinance is inconsistent with state law, we must hold that the enforcement provisions of the Ordinance are impermissible, violate the will of the Legislature as expressed in section 382.113 and Chapter 7 of the Water Code, and are thus preempted.

In summary, the Legislature has enacted a comprehensive and flexible regulatory regime for investigation into possible violations of the Act and consistent enforcement of the state's air-pollution laws. The Legislature enacted specific requirements for criminal prosecution of a violation of the Act or TCEQ rules, orders, or permits. The Ordinance allows the City to circumvent those requirements, creating a parallel enforcement mechanism without deference to the TCEQ's statutorily mandated discretion. The Legislature's intent that administrative and civil remedies be applied whenever possible and at the discretion of the TCEQ is thwarted by the Ordinance's discretionless criminal enforcement provisions. We conclude that the Ordinance's enforcement provisions, section 21-164(c) through (f), are inconsistent with the statutory procedural requirements for criminal prosecution as reflected in the Act and the Water Code. Thus, section 21-164(c) through (f) of the Ordinance is preempted.

## B. Registration Requirement and Fees

The Ordinance states: "It shall be unlawful for any person to operate or cause to be operated any facility unless there is a registration for the facility" with the City. HOUSTON, TEX., CODE OF ORDINANCES ch. 21, art. VI, div. 2, § 21-162(a). The Act states: "An ordinance enacted by a municipality must be consistent with this chapter and the [TCEQ's] rules and orders and *may not make unlawful a condition or act approved or authorized* under this chapter or the [TCEQ's] rules or orders." TEX. HEALTH & SAFETY CODE § 382.113(b) (emphasis added).

The court of appeals concluded that the City's concurrent permitting process was not preempted by relying on *Unger v. State*, which held that a municipal ordinance making it unlawful to drill an oil or gas well within the city limits without a city-issued drilling permit was not preempted by legislation granting the Texas Railroad Commission authority to issue drilling permits for such wells. ___ S.W.3d at ___ (citing *Unger v. State*, 629 S.W.2d 811, 812–13 (Tex. App.—Fort Worth 1982, pet. ref'd)). The court of appeals mistakenly termed *Unger* a "writ refused" case and therefore incorrectly concluded that the case had the precedential value of a Supreme Court case. *Id.* at ___. *Unger* was not reviewed by this Court, as the court of appeals stated, but by the Court of Criminal Appeals. *See Unger*, 629 S.W.2d at 812 (reflecting that Unger was appealing a criminal conviction which was under the jurisdiction of the Court of Criminal Appeals). A refused petition by the Court of Criminal Appeals does not carry the same precedential weight as a writ or petition refused by this Court. *Compare* TEX. R. APP. P. 69.1 ("If four judges [of the Court of Criminal Appeals] do not vote to grant a petition for discretionary review, the . . . petition is *refused*."), *with* TEX. R. APP. P. 56.1(c) ("If the Supreme Court determines . . . that the court of appeals' judgment

is correct and that the legal principles announced in the opinion are likewise correct, the Court will refuse the petition[,] . . . [and] [t]he court of appeals' opinion . . . has the same precedential value as an opinion of the Supreme Court."); *see Sheffield v. State*, 650 S.W.2d 813, 814 (Tex. Crim. App. 1983) (per curiam) (emphasizing "that the summary refusal of a petition for discretionary review by [the Court of Criminal Appeals] is of no precedential value"). Thus, *Unger* does not dispose of this issue.

The City argues that its Ordinance's requirement of a separate registration does not make unlawful what the Act or the TCEQ permits, but that the requirement is a ministerial, administrative procedure that will identify polluters and fund inspections that the Act and the TCEQ expressly allow a municipality to conduct. *See* TEX. HEALTH & SAFETY CODE §§ 382.111(a) (power to conduct inspection); .113(a) (power to enact ordinance). Furthermore, while the Act enables the TCEQ to issue permits to facilities, the City contends that it does not abridge the authority of municipalities to require registration to identify entities subject to enforcement efforts. *See id.* § 382.051 (power to issue permits). The City's arguments are unavailing and do not save the Ordinance from preemption.

BCCA Appeal Group points out that a facility's operations complying with the Act and TCEQ rules and orders would nonetheless be made unlawful by the Ordinance if that facility failed to register with the City or pay a registration fee. *See* HOUSTON, TEX., CODE OF ORDINANCES, §§ 21-161(a) ("facility"), -162, -163, -166. Thus, BCCA Appeal Group argues, the Ordinance's registration requirement is preempted because it "make[s] unlawful a condition or act approved or

authorized under [the Act] or the [TCEQ's] rules or orders," in direct violation of the Act. TEX. HEALTH & SAFETY CODE § 382.113(b). We agree.

The Act acknowledges a city's right to enact ordinances to control air pollution with two limitations: (1) the ordinance must not be inconsistent with the Act or TCEQ rules or orders; and (2) the ordinance must not "make unlawful a condition or act approved or authorized under [the Act] or the [TCEQ's] rules or orders." *Id.* § 382.113(a)(2), (b). We apply the same principles used to construe statutes to construe municipal ordinances. *Bd. of Adjustment of City of San Antonio v. Wende*, 92 S.W.3d 424, 430 (Tex. 2002). Under well-settled principles of statutory construction, we begin with the statutory language itself. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). "If the statute is clear and unambiguous, we must apply its words according to their common meaning without resort[ing] to rules of construction." *Id.*

The Ordinance requires facilities to register with the City by filing an application and paying the corresponding registration fee. HOUSTON, TEX., CODE OF ORDINANCES, §§ 21-161, -162, -163, -166. "It *shall be unlawful* for any person to operate or cause to be operated any facility unless there is a registration for the facility." *Id.* § 21-162(a) (emphasis added); *see id.* § 21-161 (defining "facility" and "registration"). Such violations are prosecuted in municipal court and result in a fine not less than $250 nor more than $1,000 for a first conviction, and up to $2,000 for a subsequent conviction. *Id.* § 21-162(a), (c). Each day without registration constitutes a separate offense. *Id.* § 21-162(d).

While the Act recognizes the City's authority to enact ordinances, the Legislature supplies a limitation with unmistakable clarity—an ordinance cannot make unlawful a condition or act

30

approved under the Act or TCEQ rules or orders. TEX. HEALTH & SAFETY CODE § 382.113(b); *see*

*S. Crushed Concrete, LLC*, 398 S.W.3d at 679 ("The plain language of section 382.113(b)

unmistakably forbids a city from nullifying an act that is authorized by either the [Act] or . . . the

[TCEQ's] rules or orders."). Under the Act, the TCEQ has the authority to authorize air emissions,

which includes the authority to issue and enforce permits for sources of air contaminants. *Id.*

§ 382.051. The TCEQ administers pre-construction permits, operating permits, special permits, and

"other permits as necessary." *Id.* Thus, a facility may have a permit issued by the TCEQ allowing

it to operate within the City's jurisdiction, and may be in full compliance with the permit conditions,

yet the facility's operation will be unlawful if the facility has not also registered with the City.

HOUSTON, TEX., CODE OF ORDINANCES, § 21-162(a). In *Southern Crushed Concrete, LLC*, the City

denied Southern Crushed Concrete's municipal permit application even though the TCEQ had

previously issued an air-quality permit authorizing construction of the facility. 398 S.W.3d at 677.

The ordinance at issue there, which imposed location restrictions, made unlawful an act approved

by the TCEQ and consequently was preempted. *Id.* We explained that "a city may not pass an

ordinance that effectively moots a [TCEQ] decision," which is precisely the effect of the City's

registration requirement in this case. *Id.* at 679. The City's requirement that a facility must register

to operate lawfully effectively moots the effect of a TCEQ permit that has been issued and allows

a facility to operate lawfully. Accordingly, the Ordinance's registration requirement is preempted

by the Act.

Because the registration requirement is preempted by the Act, we need not address the

accompanying fees, fines, or definition of "facility." *See* HOUSTON, TEX., CODE OF ORDINANCES,

31

§§ 21-161, 162(c)–(d), -163.  We hold that the Ordinance registration provisions in sections 21-161, 21-162, 21-163, and 21-166 are preempted.

## IV. Incorporation of TCEQ Rules

The Ordinance is preempted only to the extent that it is inconsistent with the Act or the Water Code.  *See Dall. Merch.'s & Concessionaire's Ass'n*, 852 S.W.2d at 491.  Therefore, while the enforcement provisions of the Ordinance in section 21-164(c) through (f) are preempted, the incorporation of TCEQ rules remains unless, as BCCA Appeal Group argues, such incorporation violates the Texas Constitution.  *See* TEX. CONST. art. II, § 1 (guaranteeing separation of powers); *id.* art. XI, § 5(a) (creating home-rule authority).  The court of appeals concluded that the incorporation was lawful because the Court of Criminal Appeals has "already upheld the Legislature's delegation of air-quality rulemaking and enforcement authority to [the] TCEQ"; the TCEQ has adopted the rules codified in the incorporated Administrative Code provisions to implement the powers and duties delegated to it by the Legislature; and the City's incorporation of those rules is pursuant to that lawful delegation to ensure that the Ordinance remains consistent with state law. ___ S.W.3d at ___.  We agree that the Ordinance's incorporation of TCEQ rules does not unconstitutionally delegate the city council's lawmaking power.

The Ordinance incorporates ten chapters of TCEQ rules found in the Administrative Code "as they currently are and as they may be changed from time to time . . . as if written word for word in this section." HOUSTON, TEX., CODE OF ORDINANCES, § 21-164(a).  BCCA Appeal Group argues that the Ordinance's adoption of future amendments unconstitutionally delegates core lawmaking

32

power from the city council to the TCEQ. The nondelegation doctrine of the Texas Constitution states:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

TEX. CONST. art. II, § 1. "The nondelegation doctrine should be used sparingly," and "courts should, when possible, read delegations narrowly to uphold their validity." *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 475 (Tex. 1997).

BCCA Appeal Group agrees that a reference to a currently existing statute would be constitutional, but argues that the Ordinance's incorporation of TCEQ rules "as they may be changed from time to time" is a separation-of-powers violation because it impermissibly delegates the city council's core lawmaking power. The City cites *Trimmier v. Carlton*, which explained that courts will give effect to the intention of the Legislature where an act adopts another act along with amendments thereto, and the subsequent amendments will apply. 296 S.W. 1070, 1074 (Tex. 1927). This principle has been codified: "Unless expressly provided otherwise, a reference to any portion of a statute or rule applies to all reenactments, revisions, or amendments of the statute or rule." TEX. GOV'T CODE § 311.027. Thus, the City argues, the Ordinance's adoption of TCEQ rules as they may be changed from time to time is permissible and does not violate the separation-of-powers doctrine. While section 311.027 does not relate directly to the nondelegation doctrine, as it is the Legislature referencing its own legislative acts, we note that principles used for statutory construction also

33

govern construction of ordinances. *Bd. of Adjustment of City of San Antonio*, 92 S.W.3d at 430. Therefore, a municipality's incorporation of reenactments and amendments is constitutionally permissible, if the delegation to that agency is permissible.

Neither BCCA Appeal Group nor the City has directed us to, and we have not found, any cases addressing the constitutionality of a home-rule city's ordinance that expressly incorporates state agency rules, as they exist, and as they may be amended in the future.[11] Therefore, we look to case law analogous to the crux of the current issue, whether a city may delegate its lawmaking authority to a state agency, and conclude that it may.[12]

In *Kousal v. Texas Power & Light Co.*, we addressed a related, but distinguishable, issue. 179 S.W.2d 283, 285 (Tex. 1944). The Legislature delegated the governmental function of fixing and regulating utility rates to home-rule municipalities. *Id.* The Court explained, "[W]hen so delegated, it must be exercised by the agency or municipality to whom it is intrusted for the benefit of its people, and they cannot delegate it to anybody else." *Id.* Similarly, in *City of Galveston v. Hill*, we held that the City's contract with a private entity "must not involve the redelegation of

---

[11] *Ex Parte Elliott* is cited by both parties and distinguished by the court of appeals. ___ S.W.3d ___; 973 S.W.2d 737, 738–39 (Tex. App.—Austin 1998, pet. ref'd). It is neither controlling nor does it directly address the relevant issue here. In *Ex Parte Elliott*, a state statute defined "hazardous waste," an allegedly "essential element" of the prohibited conduct, as "solid waste identified or listed as a hazardous waste by the administrator of the United States Environmental Protection Agency under the federal Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, as amended." *Ex Parte Elliott*, 973 S.W.2d at 738–39. The Third Court of Appeals held that the state statute adopted by reference the federal act and the regulations promulgated thereunder, which were in effect on the date the statute was enacted, and the statute was not an unlawful delegation of power. *Id.* at 742. But the court never reached the issue of whether adoption or incorporation of future laws, rules, or amendments thereto would have been constitutional. *Id.* We therefore agree with the court of appeals that *Ex Parte Elliott* is inapposite.

[12] In *City of Weslaco v. Melton*, we held an ordinance valid that "adopts word for word the short form of the milk ordinance requiring pasteurization as suggested and recommended by the United States Public Health Service." 308 S.W.2d at 19. Although the Court did not discuss nondelegation principles as they were not raised, the Court implicitly accepted ordinance delegation of core lawmaking power from the city council to an agency.

governmental or legislative functions of the [city] board of trustees," which was delegated the task of managing and controlling the Galveston Wharves. 519 S.W.2d 103, 104–05 (Tex. 1975). The statute in *Hill* mandated, "If the city is operating under a Home Rule Charter and said Charter contains provisions requiring that the improvements and facilities be managed or controlled by a board of trustees, then the provisions of such Charter shall be followed." *Id.* at 104. The City of Galveston included in its charter that "[t]he Galveston Wharves, and the income and revenue therefrom, shall be fully managed, controlled, maintained and operated by a Board of Trustees." *Id.* Thus, according to the statute and Galveston City Charter, the setting of rates and determination of policies, being governmental functions, were reserved for the board of trustees and could not be delegated away. *Id.* at 105. In *Kousal*, the Legislature specifically delegated a governmental function to municipalities, disallowing a redelegation from the municipality to anyone else. *Kousal*, 179 S.W.2d at 285. In *Hill*, the Legislature prescribed that the function must be performed according to a city's charter, and the charter specifically mandated who must perform the function. *Hill*, 519 S.W.2d at 104–05. In both cases, specific limitations provided through statute or city charter prevented the delegation at issue. *See id.*; *Kousal*, 179 S.W.2d at 285. No such limitation is present here. Instead, the statute recognizes the City's ability to enact an ordinance so long as it is not inconsistent with the Act or TCEQ rules or orders. TEX. HEALTH & SAFETY CODE § 382.113.

Similarly, both cases that BCCA Appeal Group relies on for the proposition that a city may not delegate the transaction of city business are distinguishable. In *DeSoto Wildwood Development, Inc. v. City of Lewisville*, the Second Court of Appeals concluded there was no evidence that the city attorney had been authorized by the city council to act to bind the city, and thus the city attorney's

35

statements in a pre-suit letter to the developer were not binding on the city. 184 S.W.3d 814, 826 (Tex. App.—Fort Worth 2006, no pet.). In *Whittington v. City of Austin*, an eminent domain case, the intent to condemn the land was expressly nondelegable by legislative and constitutional limitations. 174 S.W.3d 889, 900 (Tex. App.—Austin 2005, pet. denied) (relying on *Burch v. City of San Antonio*, 518 S.W.2d 540, 544–45 (Tex. 1975), which held that "home rule cities are not given the authority to delegate the power of eminent domain to subordinate agencies" in view of the limitations of the specific civil statutes that grant and define the city's power of eminent domain and require the city's governing body itself to condemn property). *DeSoto Wildwood Development* deals with an individual attempting to bind the city without city approval, and *Whittington* involves express constitutional and statutory limitations. *DeSoto Wildwood Development, Inc*, 184 S.W.3d at 826; *Whittington*, 174 S.W.3d at 900. Neither case involves a city council delegating authority to a state agency where no statutory limitation exists.

A home-rule municipality does not derive its power to enact ordinances from the Legislature. *Dall. March.'s & Concessionaire's Ass'n*, 852 S.W.2d at 490–91; *see* TEX. CONST. art. XI, § 5(a). In other words, the Legislature does not delegate legislative power to cities; a home-rule city looks to the Legislature and Constitution only for limitations on its power to enact ordinances. *Dall. March.'s & Concessionaire's Ass'n*, 852 S.W.2d at 490–91; *see* TEX. CONST. art. XI, § 5(a). Here, no statutory or constitutional provisions limit the City's incorporation of TCEQ rules. In fact, the Act's comprehensive statutory scheme allows a city to enact an ordinance "not inconsistent" with the Act or TCEQ rules or orders. TEX. HEALTH & SAFETY CODE § 382.113(a)(2), (b). The Legislature has given the TCEQ the authority to administer the Act, and the TCEQ has the "powers

36

necessary or convenient to carry out its responsibilities." *Id.* § 382.011(c). Therefore, when the City adopted the TCEQ rules as they currently exist and as they may be amended, the Ordinance complied with the Act's mandate that any ordinance must not be inconsistent with the TCEQ's rules and ensured that consistency be maintained on an ongoing basis. *See* HOUSTON, TEX., CODE OF ORDINANCES, § 21-164(a).

When, as here, a statute recognizes a city's authority to enact ordinances consistent with an authorizing statute as well as an agency's rules and orders promulgated under the authorizing statute, an ordinance that incorporates that agency's rules as they exist and as they may be amended does not violate the nondelegation doctrine of the Texas constitution.

## V. Conclusion

The court of appeals erroneously held that the Ordinance was not preempted with "unmistakable clarity." We hold that the Ordinance's enforcement provisions in section 21-164(c) through (f), and the Ordinance's registration provisions, including those in sections 21-161, 21-162, 21-163, and 21-166, are preempted and therefore unenforceable. Accordingly, we reverse the court of appeals' judgment in part and render judgment for declaratory relief consistent with this opinion. *See* TEX. R. APP. P. 60.2(c). Regarding the incorporation of TCEQ rules found in Ordinance section 21-164(a), the court of appeals' judgment is affirmed.

_____
Paul W. Green
Justice

OPINION DELIVERED: April 29, 2016

37