COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
|---|---|---|
| GERALD E. HAWXHURST, | § | No. 08-19-00257-CV |
| Appellant / Cross-Appellee, | § | Appeal from the |
| v. | § | 201st District Court |
| AUSTIN'S BOAT TOURS, AUSTIN EDWARDS, ANGEL EDWARDS, AND ARIA TRANSPORT LLC, | § § | of Travis County, Texas |
| | § | (TC# D-1-GN-15-002114) |
| Appellees / Cross-Appellants. | § | |

## **MEMORANDUM OPINION**

This is a dispute over liability for damage to a yacht that became entangled with a rope connecting a life preserver to an object at the bottom of Lake Travis.[1] Gerald E. Hawxhurst sued Austin's Boat Tours and related parties, claiming they are responsible for the damage due to their negligence and their alleged agreement to pay for yacht repairs. All of Hawxhurst's claims were dismissed on a motion for summary judgment, and he appeals. The Appellees / Cross-Appellants challenge an award of attorney's fees in connection with the dismissal of a counterclaim pursuant to the Texas Citizens Participation Act.

---

[1] This case was transferred from the Third Court of Appeals pursuant to the docket equalization efforts of the Supreme Court of Texas. *See* TEX.GOV'T CODE ANN. § 73.001. We follow the precedents of the Third Court to the extent they might conflict with the precedents of this Court. TEX.R.APP.P. 41.3.

We affirm the summary judgment to the extent it dismissed claims brought against the two individual defendants on an alter-ego theory of liability. We otherwise reverse the summary judgment as rendered on the substantive claims. We affirm the award of attorney's fees, costs, expenses, and sanctions pursuant to the TCPA.

## Background

This dispute already has been the subject of an interlocutory appeal from the denial of a TCPA motion to dismiss.[2] As described in the earlier opinion,[3] Hawxhurst alleges that in July 2015, he was boating on Lake Travis when he observed a life jacket floating in the water. He maneuvered his yacht toward the life jacket so that his passenger could pull it from the lake. As he approached the life jacket, his propeller became entangled in a dock line that was tied to the life jacket and anchored to the bottom of the lake by a heavy object. The motor became disabled, and while Hawxhurst's passenger attempted to remove the line from the motor, the yacht drifted into the rocky shore, damaging the hull and resulting in repair costs of $409. According to Hawxhurst, the life jacket bore the name of Austin Boat Tours, a company that organizes boat tours and parties on Lake Travis.

Hawxhurst contacted Austin Boat Tours. He alleges that the person with whom he spoke by phone identified himself as the company's owner, acknowledged that a company representative had placed the "make-shift buoy" in the lake and had left it there, and promised to pay for repairs to the yacht. Hawxhurst further contends that he spoke to and exchanged emails with the company's lawyer, memorializing its agreement to pay for the repairs. Hawxhurst had the boat repaired and forwarded the invoice to the company, which refused to pay.

---

[2] *See Hawxhurst v. Austin's Boat Tours*, 550 S.W.3d 220 (Tex. App.—Austin 2018, no pet.).

[3] *See id*. at 223-24, 231-32.

Hawxhurst originally filed suit against Austin Boat Tours, Austin Edwards, and Angel Edwards. After the defendants identified Aria Transport LLC as the owner and operator of Austin's Boat Tours, Hawxhurst joined that entity as an additional defendant. All defendants (collectively, the ABT Parties) then filed a motion for summary judgment on all claims. Hawxhurst responded and also objected to the ABT Parties' summary-judgment evidence. The ABT Parties filed their own objections to Hawxhurst's summary-judgment evidence. The trial court ruled on the evidentiary objections by written orders, excluding some evidence offered by both sides. The court also granted the motions for summary judgment on all claims. Hawxhurst filed a motion for reconsideration and for new trial, providing arguments in opposition to the evidentiary objections that had been granted. The motion was denied by operation of law. Hawxhurst then filed a notice of appeal from the order granting summary judgment, and the ABT Parties filed their notice of cross-appeal from the order granting fees, costs, expenses, and sanctions pursuant to the TCPA.

**Analysis**

## I. Exclusion of summary-judgment evidence

The trial court sustained several objections to Hawxhurst's evidence which, if admitted, would materially affect analysis of the summary-judgment motion. Accordingly, we will first address those appellate challenges to the evidentiary rulings which are essential to resolving the challenge to the summary judgment.[4] Because the record reflects no response to the objections

---

[4] *See* TEX.R.APP.P. 44.1(a)(1) (no judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of probably caused the rendition of an improper judgment); *see also* TEX.R.APP.P. 47.1 (opinion must address every issue raised and necessary to final disposition of the appeal).

3

prior to the summary-judgment ruling, the evidentiary issues were preserved for review only to the extent they also were advanced in Hawhurst's motion for reconsideration and new trial.[5]

The evidentiary standards that apply in trials also control the admissibility of evidence in summary-judgment proceedings.[6] The admission or exclusion of summary-judgment evidence is reviewed for abuse of discretion.[7] A trial court abuses its discretion when it acts without reference to any guiding rules or principles.[8]

Hawxhurst's summary-judgment response relied heavily on his own affidavit, which among other things detailed his version of events concerning several phone conversations relating to his complaint to Austin's Boat Tours. The ABT Parties objected to paragraphs 6, 7, 8, and 11, which stated as follows:

> 6.      I reported the incident to Defendants on July 22, 2014, when I called to discuss the placement of the illegal mooring buoy in the lake and the damage it caused my boat. It was on this call that Defendants first promised to pay me for the cost of the repairs necessary to fix the damage caused by their negligent conduct. During the phone call, I spoke with a person who identified himself as an "owner" of ABT. He acknowledged that a "captain" for ABT had placed the make shift buoy using the ABT life preserver in Devil's Hollow, a practice he claimed to know about, and then had abandoned it. While on the call, he also acknowledged that the buoy was illegal and presented an extreme risk of harm to the public. At one point in the call, he said he had to call "another owner" about this situation. When I next spoke to him, he said he had spoken with "another owner" and she and her husband, also an owner, promised they would pay for repairs to my boat upon presentment of the repair invoice. He also said that ABT's lawyer would be contacting me to arrange payment.

---

[5] *See* TEX.R.APP.P. 33.1(b); *Cmty. Initiatives, Inc. v. Chase Bank of Tex.*, 153 S.W.3d 270, 281 (Tex. App.—El Paso 2004, no pet.).

[6] *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 163 (Tex. 2018) (per curiam) (citing *United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997) (per curiam)).

[7] *Elness Swenson Graham Architects, Inc. v. RLJ II-C Austin Air, LP*, 520 S.W.3d 145, 157 (Tex. App.—Austin 2017, pet. denied).

[8] *Id*. (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).

7. As I had not been contacted by ABT's lawyer, a couple days later I called Defendants and spoke with a person who identified himself as ABT's "manager" and who again confirmed that Defendants had wrongfully placed the ABT life preserver in the lake and reaffirmed the agreement to pay for the damage it caused to my boat upon presentment of the repair bill. This person also asked me to return the make-shift ABT life preserver buoy because, according to him, it was illegal and should be destroyed. He also reiterated that ABT's lawyer would take care of arranging my payment for the damages upon presentment of the repair bill to him.

8. I then communicated with Defendants' lawyer, Paul Batrice. Mr. Batrice initially represented to me during our phone conversation that Defendants promised to pay for the repairs necessary to fix the damage caused by their lifejacket buoy. In addition to our phone calls, Mr. Batrice and I had some email correspondence. Attached hereto as Exhibit A is a true and correct copy of an email exchange between Mr. Batrice and me that took place between July 22, 2014 and May 11, 2015.

. . .

11. Upon presentment of the repair bill, however, Defendants through their lawyer breached their oral agreement and refused to pay for the damage. On or about March 11, 2015, Mr. Batrice informed me that, despite the parties' agreement for Defendants to pay for the repairs, Defendants were now refusing to do so. Remarkably—and without ever even seeing the subject ABT life preserver—Mr. Batrice wrote that Defendants would not honor their promise to pay for the damage because the hazard caused by their illegal, make-shift buoy was "open and obvious." (See Ex. A at 1.)

Among other objections, the ABT Parties objected that these paragraphs are "based on complete hearsay, double hearsay and are improperly conclusory." The trial court sustained the objection generally, without specifying any particular grounds.

In his motion for reconsideration of the summary judgment, Hawxhurst argued, among other things, that paragraphs 6, 7, 8, and 11 did not contain hearsay because statements by an opposing party are not hearsay. Based on the alleged self-identification by speakers as being an "owner" or "manager" of Austin's Boat Tours, as well as Batrice's status as the company's lawyer,

5

Hawxhurst argued that the statements were not hearsay pursuant to Rule 801(e)(2). That rule states:

> **(e) Statements That Are Not Hearsay.** A statement that meets the following conditions is not hearsay:
>
> .  .  .
>
> **(2) *An Opposing Party's Statement.*** The statement is offered against an opposing party and:
> (A) was made by the party in an individual or representative capacity;
> (B) is one the party manifested that it adopted or believed to be true;
> (C) was made by a person whom the party authorized to make a statement on the subject;
> (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
> (E) was made by the party's coconspirator during and in furtherance of the conspiracy.

TEX.R.EVID. 801(e)(2).

While the substance of the various telephone conversations is hotly disputed, there is agreement that Hawxhurst had phone conversations with an Austin's Boat Tours employee and with the company's lawyer. In particular, while the ABT Parties denied that Hawxhurst ever spoke to an owner or manager of Austin's Boat Tours, their own evidence confirmed that Hawxhurst spoke with an employee who was responsible for answering the telephone. The ABT Parties emphasize that Hawxhurst could not identify the person to whom he spoke, but that does not establish the inapplicability of Rule 801(e)(2)(D) when it is undisputed that he spoke to an employee who was responsible for answering the phone.

On appeal, the ABT Parties rely on *Big Mack Trucking Co. v. Dickerson* for the proposition that "[a]n agent's hearsay statements should be received against the principal as vicarious admissions only when the trial judge finds, as a preliminary fact, that the statements were

6

authorized."[9] That case predated the adoption of Rule 801(e), which defined as "not hearsay" statements by an agent or employee within the scope of that relationship, and which courts have acknowledged as a change from of the rule *Big Mack Trucking*.[10] The actual scope of authority that had been extended to the employee on the phone or the lawyer might bear on the significance of the statements alleged in the Hawxhurst affidavit, but these paragraphs of the affidavit are not wholly inadmissible as hearsay. *See* TEX.R.EVID. 801(e)(2)(D).

We conclude that it was an abuse of discretion to exclude and disregard these paragraphs on the basis of hearsay, and as noted below, other objections relating to these paragraphs do not impact our analysis of the summary-judgment ruling.

## II.     Summary judgment

Hawxhurst challenges three distinct aspects of the summary judgment entered against him. First, he challenges the ruling dismissing his claims based on allegations of negligence. Second, he challenges the ruling dismissing his claim based on breach of contract. Finally, he challenges the ruling on alter-ego allegations implicating the individual defendants.

We review summary judgments de novo.[11] Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law.[12] We

---

[9] 497 S.W.2d 283, 287 (Tex. 1973).

[10] *See Hartman v. Trio Transp., Inc.*, 937 S.W.2d 575, 579–80 (Tex. App.—Texarkana 1996, writ denied); *Norton v. Martin*, 703 S.W.2d 267, 272 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.) ("TEX.R.EVID. 801(e)(2)(D) is a significant change in prior Texas law on the subject of admissions. The new rule overturned the often criticized holding of *Big Mack Trucking* . . . .").

[11] *Balderas-Ramirez v. Felder*, 537 S.W.3d 625, 631 (Tex. App.—Austin 2017, pet. denied) (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)).

[12] *Id*. (citing TEX.R.CIV.P. 166a(c) & *BCCA Appeal Grp., Inc. v. City of Houston*, 496 S.W.3d 1, 7 (Tex. 2016)).

7

take as true any evidence favorable to the non-movant and indulge every reasonable inference from the evidence in the non-movant's favor.[13]

With respect to no-evidence grounds, the non-movant has the burden of presenting evidence to raise a genuine issue of material fact as to the elements of claims or defenses that were challenged in the motion.[14] No-evidence motions are essentially pretrial directed verdicts, and we review them under the same legal-sufficiency standard.[15] That is, we will affirm a grant of a no-evidence motion when the record reveals a complete absence of evidence of a vital fact, rules of law or evidence prevent the court from giving weight to the only evidence offered to prove a vital fact, the evidence offered to prove a vital fact is no more than a mere scintilla, or the evidence conclusively establishes the opposite of a vital fact.[16] "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact."[17] "More than a scintilla of evidence exists when the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'"[18]

For "traditional" summary-judgment grounds, in contrast, the movant must first present evidence that establishes or negates a claim or defense as a matter of law.[19] Only if this burden is

---

[13] *Id.* (citing *Lightning Oil Co. v. Anadarko E & P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017)).

[14] *Id.* at 632 (citing TEX.R.CIV.P. 166a(i) & *Lightning Oil*, 520 S.W.3d at 45).

[15] *Id.* (citing *Merriman*, 407 S.W.3d at 248).

[16] *Id.* (citing *Merriman*, 407 S.W.3d at 248; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)).

[17] *King Ranch*, 118 S.W.3d at 751 (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

[18] *Id.* (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

[19] *Balderas-Ramirez*, 537 S.W.3d at 632 (citing TEX.R.CIV.P. 166a(c) & *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015)).

met must the non-movant present evidence to raise a genuine issue of material fact that would defeat summary judgment.[20]

### a. Negligence-based causes of action

In two separate counts of his petition, Hawxhurst alleged causes of action for gross negligence and for "negligence per se." The ABT Parties note, correctly, that "negligence per se" is not a distinct cause of action, but rather denotes one way of proving a negligence claim.[21] Because the ABT Parties sought summary judgment based on the core elements of a negligence claim, making no attempt to otherwise argue that the petition and evidence could not additionally support a claim of gross negligence, we will likewise focus our analysis on the core underlying allegation of negligence. To recover on a negligence claim, the plaintiff must prove that there is a duty owed to him by the defendant, a breach of that duty, and that the breach proximately caused damages to the plaintiff.[22] The ABT Parties argued in the trial court that Hawxhurst could present no evidence that they owed him any legal duty, that they breached any such duty, or that they proximately caused his damages.

In a unified argument, the ABT Parties' summary-judgment motion argued both that there was no evidence of a duty, breach of duty, or proximate causation, and that their evidence affirmatively disproved all these elements. In particular, they argued that their evidence proved that they "had nothing to do with placing any buoy in Lake Travis on July 20, 2014." They argued

---

[20] *Id*. (citing *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014)).

[21] *See, e.g.*, *Weirich v. IESI Corp.*, No. 03-14-00819-CV, 2016 WL 4628066, at *2 (Tex. App.—Austin Aug. 31, 2016, no pet.) (mem. op.) (citing *Thomas v. Uzoka*, 290 S.W.3d 437, 445 (Tex. App.–Houston [14th Dist.] 2009, pet. denied)).

[22] *See, e.g.*, *Zenith Star Ins. Co. v. Wilkerson*, 150 S.W.3d 525, 530 (Tex. App.—Austin 2004, no pet.).

their summary-judgment evidence showed, through "End of Tour" reports, that no tour boat on Lake Travis that day got an anchor stuck, and that they did not place a life jacket in the lake "on or about" that date. They also stated that despite Hawxhurst's alleged statement that the rope was tethered to a cinder block, Austin's Boat Tours never uses cinder blocks as anchors. Even if they were responsible for the placement of the life jacket, which they denied, the ABT Parties argued that they acted with ordinary care by temporarily marking the location of a stuck anchor, which they denied was an illegal act.

In response to the motion for summary judgment, Hawxhurst offered two arguments to justify a duty owed to him by Austin's Boat Tours. He contends that a party who creates a dangerous situation has a duty to prevent resulting injury to others,[23] and that a duty in this case is supported by his evidence that Austin's Boat Tours created a "makeshift buoy" that appeared to be a free-floating life preserver but in fact was secured to the lake bottom by a rope. He further contends that regulations of the Lower Colorado River Authority, which apply to Lake Travis, provide a relevant standard of conduct by prohibiting the abandonment of personal property, placing a buoy or marker on the water, or constructing or maintaining a floating structure on the water that unreasonably prevents, impedes, or interferes with safe navigation or access to the water. A regulation governing "Obstruction of Navigation and Water Flow" provides that "[a]ll floating or fixed structures of any type on LCRA Water shall be adequately marked or lighted so as not to create a safety hazard for the public." Violation of the regulations is a Class C misdemeanor.

---

[23] *See, e.g.*, *Buchanan v. Rose*, 138 Tex. 390, 159 S.W.2d 109, 110 (1942); *San Benito Bank & Tr. Co. v. Landair Travels*, 31 S.W.3d 312, 319 (Tex. App.—Corpus Christi 2000, no pet.); *see also* Restatement (Third) of Torts: Phys. & Emot. Harm § 7 (2010) ("An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm.").

With respect to evidence of breach and proximate causation, Hawxhurst submitted the affidavit of his passenger without objection, providing evidence that the boat encountered "what appeared to be a lifejacket bearing the name of . . . Austin's Boat Tours floating loose on the surface of the lake," and which turned out to be "tethered to the bottom of the lake via a dock line." Hawxhurst also submitted his own affidavit in which he stated that he placed a phone call to Austin's Boat Tours, and he spoke to a person who identified himself as an "owner" of the company and acknowledged that a company "captain" had "placed the make-shift buoy using the ABT life preserver in Devil's Hollow . . . and then had abandoned it." In a subsequent phone call, Hawxhurst claimed to have spoken to a person who identified himself as a "manager" for the company, who confirmed that the life preserver was "wrongfully placed . . . in the lake."

"The existence of a duty is a question of law determined by the court."[24] But answering that question of law may first require a resolution of the operative facts. When the evidence does not conclusively establish the pertinent facts or the reasonable inferences to be drawn therefrom, the existence of a duty becomes one of fact for the jury.[25] By sustaining the ABT Parties' hearsay objection to the Hawxhurst affidavit,[26] the trial court excluded from its consideration the evidence of a material fact dispute about whether Austin's Boat Tours was responsible for leaving one of

---

[24] *Trammell Crow Cent. Tex., Ltd. v. Gutierrez*, 267 S.W.3d 9, 12 (Tex. 2008).

[25] *See Union Pac. R. Co. v. Williams*, 85 S.W.3d 162, 166-69 (Tex. 2002) (citing *Mitchell v. Missouri-Kansas-Tex. R. Co.*, 786 S.W.2d 659, 662 (Tex. 1990)).

[26] The trial court also sustained objections that the Hawhurst affidavit was conclusory, included double hearsay, and referenced settlement negotiations. None of these objections self-evidently apply to exclude the evidence that an employee of Austin's Boat Tours confirmed that one of the company's captains was responsible for leaving the life preserver on the lake. To the extent the ABT Parties objected that the affidavit was conclusory, the only aspect of the affidavit specifically categorized as conclusory in their appellate brief is the employee's alleged statement that the buoy "presented an extreme risk of harm." As this aspect of the affidavit is unnecessary to our resolution of the challenge to the summary judgment, we need not resolve whether the trial court acted within its discretion by sustaining the objection to that part of the affidavit as being conclusory. *See* TEX.R.APP.P. 44.1(a)(1) & 47.1.

11

its life preservers on the surface of the lake, tethered to the bottom by a rope. To the extent that the ABT Parties suggest on appeal a lack of evidence that the person who answered the phone had personal knowledge about responsibility for leaving the life preserver on the lake, that was not among the objections made in the trial court. The affidavit established a fact dispute as to whether Austin's Boat Tours created a dangerous condition on the lake, thereby subjecting itself to a duty to prevent injury to other boaters like Hawxhurst. The same evidence, expressly disregarded by the trial court, likewise established a fact dispute about whether the acts of Austin's Boat Tours were a proximate cause of Hawxhurst's damages. To the extent it might ultimately be proved that Austin's Boat Tours was responsible for the rope that disabled Hawxhurst's motor, the motion for summary judgment did not establish that damages to an unsuspecting yacht operator were unforeseeable and therefore unrecoverable. We thus conclude that summary judgment should not have been granted as to Hawxhurst's allegations of negligence.

### b. Breach of contract

In his petition Hawxhurst also alleged breach of contract by the ABT Parties. The petition alleged that Austin's Boat Tours, through both its employees who answered the phone and its lawyer, "promised to pay for repairs upon presentment of the repair invoice." Hawxhurst alleged that he "accepted the offer," and in reliance on the promise, "undertook and paid for repairs for the damage caused to the Boat." In the affidavit supporting the response in opposition to the motion for summary judgment, Hawxhurst averred:

> Defendants and I agreed that the boat would be repaired when it was scheduled to be taken out of the water for scheduled maintenance. Throughout my discussions with Defendants and their representatives, it was made clear that Defendants would pay for the repairs to my boat necessitated by their negligent conduct in exchange for me not filing a lawsuit against them and for me absorbing the additional transportation costs if they paid promptly.

12

The ABT Parties did not object to this part of Hawxhurst's affidavit.

The ABT Parties moved for summary judgment on the basis that there was no evidence of any offer *from Hawxhurst to the ABT Parties*; no evidence of any acceptance of any offer *by the ABT Parties from Hawxhurst*; no evidence of mutual assent between the parties in that "the main parties never even spoke;" no evidence that a contract had been executed in writing; and no evidence of any exchange of consideration. They also argued that the alleged contract violated the statute of frauds because it was purportedly a contract by one person to answer for another person's debts, and it was not in writing.

To the extent the trial court sustained the ABT Parties' objections to evidence of promises to pay for damage to the yacht, for the reasons discussed above that ruling was in error, and Hawxhurst's evidence of his conversations with employees of Austin's Boat Tours was properly before the court as part of the summary-judgment record.[27] Moreover, there was no objection to Hawxhurst's affidavit to the extent it alleged the oral contract included the agreement that the payment for repairs would be made in exchange for his forbearance from filing suit and from seeking additional recovery for transportation expenses associated with the repairs.

Relying upon *Perez v. Sentry Insurance*,[28] the ABT Parties argue that Hawxhurst's affidavit fails to establish a fact issue about the existence of a binding oral contract. *Perez* is distinguishable. That case involved an insurance adjuster's alleged promise to pay for damages to a car.[29] The court noted that even to the extent the evidence raised a fact issue about an offer, there

---

[27] Because evidence of a promise to pay was before the court regardless of whether that aspect of Hawxhurst's alleged conversation with the company's attorney was inadmissible as a settlement communication, we need not resolve the challenge to that aspect of the trial court's evidentiary rulings. *See* TEX.R.APP.P. 44.1(a)(1) & 47.1.

[28] No. 04-13-00258-CV, 2013 WL 6535310 (Tex. App.—San Antonio Dec. 11, 2013, no pet.) (mem. op.).

[29] *Id*. at *2.

13

was no evidence to establish the other essential elements of an oral contract.[30] In contrast, Hawxhurst's evidence alleges his express acceptance of the offer and an exchange of promises.

On appeal the ABT Parties have not re-urged their argument that the statute of frauds applies, and rightly so. The evidence in the summary-judgment record relates to an alleged obligation incurred by Austin's Boat Tours to reimburse Hawxhurst for the cost of repairs, not an obligation to answer for any other person's debts. The ABT Parties also argue for the first time on appeal that the Austin's Boat Tours employees who spoke to Hawxhurst lacked authority to enter into a contract with him, but that cannot be the basis for affirming the summary judgment because that was not the argument they made in their motion.[31]

We conclude that the trial court erred by granting summary judgment on Hawxhurst's claim for breach of contract.

### c. Alter-ego liability

The remaining portion of the ABT Parties' summary-judgment motion related to the petition's allegations against Austin and Angel Edwards individually, seeking to hold them liable for the alleged liability of Aria Transport. Hawxhurst alleged in his petition that each defendant is the alter ego of each other defendant. He alleged that to the extent that any of the ABT Parties was an entity formed for the purposes of limiting the personal exposure of any such defendant, "such corporate or other status was and is fraudulent," has been improperly maintained to defraud him as a creditor, and should be disregarded for the purposes of liability and damage. Hawxhurst further alleged that the Edwardses directly managed, controlled, and dominated the operations of Austin's

---

[30] *Id.*

[31] *See* TEX.R.CIV.P. 166a(c).

Boat Tours and Aria Transport, and that a "unity of ownership" exists between the Edwardses on one hand, and between Austin's Boat Tours and Aria Transport on the other, such that the businesses "do not have a separate legal personality." To the extent the ABT Parties' counsel had suggested that they lacked funds to pay the TCPA fees award, Hawxhurst argued that the company was undercapitalized and thus maintaining the separate legal existence of Austin's Boat Tours and Aria Transport would promote injustice and fraud, making it equitable to treat them as the alter egos of the Edwardses.

Use of the limited liability company form ordinarily functions to insulates members and managers from personal liability for the LLC's obligations.[32] As applied in this case, alter-ego liability requires a particular relationship between the LLC and an individual member in order to disregard the entity form—the LLC must be organized and operated as a mere tool or business conduit of the individual.[33] Stated differently, alter-ego liability can be imposed only when there is such unity between company and individual that the separateness of the LLC has ceased and holding only the company liable would result in injustice.[34]

In their motion for summary judgment, the ABT Parties argued that Hawxhurst had no evidence to support the claim that the Edwardses should be held individually liable for the

---

[32] *See* TEX.BUS.ORGS.CODE ANN. § 101.114 ("Except as and to the extent the company agreement specifically provides otherwise, a member or manager is not liable for a debt, obligation, or liability of a limited liability company, including a debt, obligation, or liability under a judgment, decree, or order of a court."). *Cf. SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444, 451 (Tex. 2008) ("We have held that the limitation on liability afforded by the corporate structure can be ignored only 'when the corporate form has been used as part of a basically unfair device to achieve an inequitable result'") (quoting *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986)).

[33] *Cf. Castleberry*, 721 S.W.2d at 272.

[34] *Cf. SSP Partners*, 275 S.W.3d at 451; *Castleberry*, 721 S.W.2d at 272 (citing *First Nat'l Bank in Canyon v. Gamble*, 134 Tex. 112, 132 S.W.2d 100, 103 (1939)).

obligations of Aria Transport.[35] In particular, they alleged that Hawxhurst has no evidence that the company was the alter ego of Austin or Angel Edwards, that its form was used to perpetrate a fraud on him, or that the company's form was used to evade its legal obligations or cause an injustice to him. To the extent these elements were legally necessary to establish the Edwardses' alter-ego liability, it became Hawxhurst's burden to present more than a scintilla of evidence—enough to enable reasonable and fair-minded people to differ in their conclusions—to raise a genuine issue of material fact on each challenged element.[36]

For purposes of this case, which involves both a negligence claim and a contract claim,[37] we will focus on Hawxhurst's evidence relating to the relationship between the LLC and its owners, i.e. whether it has been organized and operated as a mere tool or business conduit of the individual owners. A determination of whether this level of unity exists "is shown from the total dealings" of the entity.[38] The relevant indicators include: the degree to which corporate formalities have been followed and company and individual property have been kept separately; the amount

---

[35] *See* TEX.R.CIV.P. 166a(i). While we analyze this issue under the no-evidence standard, we note that the ABT Parties also presented traditional summary-judgment grounds. They argued that Aria Transport was formed nearly two years before the incident that resulted in this litigation, proving that it was not formed for the purpose of perpetuating a fraud on Hawxhurst. They also presented evidence that Aria Transport had observed business formalities by maintaining distinct records and bank accounts, and by paying separate taxes. They presented evidence that the company had sufficient assets to pay any judgment.

[36] *See King Ranch*, 118 S.W.3d at 751.

[37] Unless a member expressly assumes liability, he may not be held liable for the LLC's *contractual obligations* on the basis that the member is or was the alter ego of the LLC unless the member is shown to have caused the company to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the member. *See* TEX.BUS.ORGS.CODE ANN. §§ 21.223-.225, 101.002; *Saltworks Ventures, Inc. v. Residences at Spoke, LLC*, No. 03-16-00711-CV, 2018 WL 2248274, at *10 (Tex. App.—Austin May 17, 2018, no pet.).

[38] *Cf. Castleberry*, 721 S.W.2d at 272.

of financial interest, ownership, and control is maintained over the company; and the use of the company for personal purposes.[39]

Setting aside proffered evidence that was excluded by the trial court in evidentiary rulings that have not been challenged on appeal, Hawxhurst's evidence to support his alter-ego allegations was limited. He relied upon discovery responses and complained about the late disclosure that Aria Transport existed and was the owner and operator of Austin's Boat Tours.[40] He pointed out that the ABT Parties identified Austin Edwards as the sole member and manager of Aria Transport, while public reports identify Angel Edwards as a director of Aria Transport and the evidence identified her as one of the "owners" of the company. He also complained about the ABT Parties attaching evidence to their motion that he contends should have been produced earlier in response to discovery requests.

Nothing presented or argued by Hawxhurst satisfied his burden in response to a no-evidence motion of presenting more than a scintilla of evidence that the "total dealings" of Aria Transport reflect that its corporate formalities have not been followed or that corporate and individual property have not been kept separately; that the Edwardses exert inappropriate control over the company; or that the company was abused for personal purposes. Accordingly, we affirm the grant of summary judgment dismissing all claims against Austin and Angel Edwards in their individual capacities.

---

[39] *Cf. id.*

[40] Hawxhurst suggests that because the ABT Parties relied on evidence that had not been previously produced, a presumption should have been applied against them. Our analysis focuses on the no-evidence aspect of the ABT Parties' summary-judgment motion. Hawxhurst did not move for a continuance or otherwise seek any opportunity to take additional discovery before the trial court ruled on the no-evidence motion. *See* TEX.R.CIV.P. 166a(i) (requiring adequate time for discovery before no-evidence summary judgment may be granted).

### III. Cross-appeal: TCPA fees

In their cross-appeal, the ABT Parties challenge the trial court's award of fees, costs, expenses, and sanctions pursuant to Hawxhurst's successful TCPA motion. The grounds for the cross-appeal are that Rule 193.6 required Hawxhurst to properly designate his attorney as a witness to support the reasonableness and necessity of the fees, and also that he should not be able to recover fees charged by his wife. In addition to responding on the merits, Hawxhurst argues that these challenges have not been preserved for appeal.

After the trial court initially denied Hawxhurst's TCPA motion to dismiss the counterclaim, the Third Court of Appeals reversed that ruling and remanded for a determination of fees and sanctions pursuant to Section 27.009 of the Civil Practice and Remedies Code. Hawxhurst filed a motion for an award of fees, costs, expenses, and sanctions, supported by an affidavit signed by his counsel of record, Susan St. Denis. The appellate record does not include the initial response from the ABT Parties or any record of the hearing held on the motion. The record does reflect that after the hearing, the ABT Parties filed a "supplemental response." The supplemental response noted that St. Denis is Hawxhurst's spouse, but it contained no legal argument that her fees were not recoverable for that reason. The supplemental response did object that St. Denis had not been designated as an expert in response to the ABT Parties' Rule 194 request for disclosures.

The trial court awarded $11,790 in fees, $528 in costs and expenses, and $100 in monetary sanctions. The ABT Parties filed a motion for new trial directed at the order awarding fees. That motion re-urged the objection to Hawxhurst's failure to disclose experts, but it made no legal argument that fees were unrecoverable because St. Denis is his spouse. The motion for new trial was denied. The appellate record contains no record of the hearing held on the motion.

Because the ABT Parties failed to preserve their objections to Hawxhurst recovering fees for the reason that the attorney rendering the services is his wife, we hold those arguments have been waived.[41]

Hawxhurst argues that Rule 193.6 applies to final trial, and not to an interlocutory hearing such as the TCPA award of attorney's fees at issue here. We need not resolve that novel procedural question because any error is harmless in the circumstances of this case. The ABT Parties were first placed on notice of St. Denis's affidavit testimony in support of a fee award when the TCPA motion to dismiss was filed in March 2017. On remand from the court of appeals, St. Denis submitted additional affidavits in August 2018. The motion granting fees was signed in September 2018, and a motion for reconsideration was heard and denied in February 2019. By February 2019, the ABT Parties had been on notice of St. Denis's status as affiant and sponsor of evidence in support of Hawxhurst's claim for attorney's fees for nearly two years. They provide no argument about how they were prejudiced, or how the trial court's ruling would have been any different, if they had received a formal response to the request for disclosures stating the obvious fact, already known to them, that for purposes of the TCPA fee request attorney-of-record St. Denis was providing evidence of fees for her services in the case. We therefore conclude that any arguable procedural defect in Hawxhurst's failure to formally designate St. Denis as an expert for purposes of his TCPA fee claim, on the facts of this case, has not been shown to have probably caused the rendition of an improper judgment or probably prevented the ABT Parties from properly presenting the case to the court of appeals.[42] Accordingly, we overrule the claims asserted in the cross-appeal.

---

[41] *See* TEX.R.APP.P. 33.1(a).

[42] *See* TEX.R.APP.P. 44.1(a).

## Conclusion

We affirm the dismissal of the claims against Austin and Angel Edwards based on their alleged alter-ego liability for the liabilities of Aria Transport d/b/a Austin's Boat Tours. We otherwise reverse the summary judgment and remand for further proceedings. The TCPA attorney's fee award is affirmed.


August 28, 2020

MICHAEL MASSENGALE, Visiting Justice


Before Alley, C.J., Palafox, J., and Massengale, V.J.
Massengale, V.J. (Sitting by Assignment)