# Supreme Court of Texas

═══════════
No. 21-0518
═══════════

City of Houston, Texas,

*Petitioner*,

v.

Houston Professional Fire Fighters' Association, Local 341,

*Respondent*

═══════════════════════════════════════════

On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas

═══════════════════════════════════════════

*~ consolidated with ~*

═══════════
No. 21-0755
═══════════

Houston Police Officers' Union, et al.,

*Petitioners*,

v.

Houston Professional Fire Fighters' Association, IAFF Local 341,
et al.,

*Respondents*

**Argued November 29, 2022**

JUSTICE BLAND delivered the opinion of the Court.

Justice Huddle and Justice Young did not participate in the decision.

The Fire and Police Employee Relations Act governs collective bargaining between a government employer and its firefighters, should the local government adopt it. When the parties cannot reach agreement, the Act requires a government employer to compensate firefighters based on terms that are "substantially equal" to those in comparable private-sector employment.[1]

This dispute arises from the City of Houston's collective-bargaining impasse with the Houston Professional Fire Fighters' Association, Local 341. When the parties could not agree to an employment contract, the Fire Fighters sued the City for compensation under the Act, codified in Local Government Code Chapter 174. In this initial suit, the Fire Fighters claimed that the City failed to meet Chapter 174's compensation standards, and they requested that the trial court set their compensation for up to one year. The City responded to the suit by challenging Chapter 174's judicial-enforcement provisions, claiming that such enforcement violates the Texas Constitution's

---

[1] Tex. Loc. Gov't Code § 174.021(1).

separation of powers clause. The City further claimed that it is immune from suit.

Meanwhile, the City's voters approved a proposition to amend the City's charter, known as the "pay-parity amendment." The amendment would require the City to set firefighter compensation commensurate with police officer compensation at similar ranks. Upon the amendment's passage, the Houston Police Officers' Union sued the Fire Fighters, seeking a declaration that Chapter 174's state-law compensation standards and collective-bargaining process preempt the pay-parity amendment, rendering it unenforceable. The City joined in the Police Officers' claim against the Fire Fighters in this second suit.

In the first suit, the trial court rejected the City's constitutional and immunity challenges, and the court of appeals affirmed.[2] In the second suit, the trial court ruled that Chapter 174 preempts the pay-parity amendment. A divided court of appeals reversed, concluding that state law does not preempt the local amendment. In its view, the two standards do not conflict because they conceivably might result in the same compensation in some instances.[3] We granted review in both cases.

We hold that Chapter 174 establishes reasonable standards for judicial enforcement such that it does not violate the constitutional separation of powers. Accordingly, we reject the City's constitutional challenge to judicial enforcement of the statute's compensation

---

[2] 626 S.W.3d 1, 23 (Tex. App.—Houston [14th Dist.] 2021).

[3] 651 S.W.3d 41, 54–56 (Tex. App.—Houston [14th Dist.] 2021).

standard. We further hold that the Fire Fighters met all prerequisites for seeking Chapter 174 enforcement, and thus the statute waives the City's immunity from the Fire Fighters' lawsuit for Chapter 174 compensation.[4] Finally, we hold that Chapter 174 preempts the pay-parity amendment. Local law may not supplant Chapter 174's rule of decision by requiring an inconsistent compensation measurement. Because the court of appeals held differently, we reverse its judgment in the second suit. We affirm its judgment in the initial suit and remand the case to the trial court for further proceedings to establish whether the City has complied with Chapter 174's compensation standards and, if not, to set appropriate firefighter compensation.

# I

## A

Resolving these cases requires familiarity with The Fire and Police Employee Relations Act in Local Government Code Chapter 174. Chapter 174 is a comprehensive framework that governs collective bargaining for those municipal employers whose voters have adopted it.

Chapter 174 forbids strikes and work stoppages.[5] In return, it provides a statutory collective-bargaining process and authorizes judicial remedies when the parties fail to reach a bargain.[6]

---

[4] *See* Tex. Loc. Gov't Code § 174.008 ("This chapter is binding and enforceable against the employing public employer, and sovereign or governmental immunity from suit and liability is waived only to the extent necessary to enforce this chapter against that employer.").

[5] *Id.* § 174.202.

[6] *E.g.*, *id.* §§ 174.105, .252.

Notably, Chapter 174 does not dictate the terms for any agreement the parties may choose to make. Under Section 174.022, a city and a bargaining unit may agree on compensation and employment conditions that they find mutually acceptable.[7] A city satisfies Chapter 174's compensation standards by reaching an agreement.[8]

When the bargaining parties cannot agree, however, Chapter 174 serves as a backstop. In such a case, Section 174.021 ties compensation to comparable jobs in the private sector that require similar skills under similar working conditions:

> A political subdivision that employs fire fighters, police officers, or both, shall provide those employees with compensation and other conditions of employment that are:
>
> > (1) substantially equal to compensation and other conditions of employment that prevail in comparable employment in the private sector; and
> >
> > (2) based on prevailing private sector compensation and conditions of employment in the labor market area in other jobs that require the same or similar skills, ability, and training and may be performed under the same or similar conditions.[9]

For Chapter 174 to govern, local voters must adopt it via an adoption election.[10] Once adopted, a city must "recognize an association

---

[7] *Id.* § 174.022(a) ("A public employer that has reached an agreement with an association on compensation or other conditions of employment as provided by this chapter is considered to be in compliance with the requirements of Section 174.021 as to the conditions of employment for the duration of the agreement.").

[8] *Id.*

[9] *Id.* § 174.021.

[10] *See id.* §§ 174.051–.052.

selected by a majority of the fire fighters of the fire department of a political subdivision as the exclusive bargaining agent for the fire fighters of that department."[11] The firefighters' bargaining association must collectively bargain with the city separately from the police officers' bargaining association unless they voluntarily join together.[12]

Chapter 174 requires the bargaining parties to meet at reasonable times, and to "confer in good faith regarding compensation, hours, and other conditions of employment or the negotiation of an agreement or a question arising under an agreement."[13] The association must provide notice to the city that it requests collective bargaining,[14] and bargaining deliberations must be open to the public.[15] Chapter 174 does not require the city to make any concession or agree to any proposal.[16]

Chapter 174's judicial-enforcement road begins when the parties arrive at an impasse. "[A]n impasse in the collective bargaining process is considered to have occurred if the parties do not settle in writing each issue in dispute before the 61st day after the date on which the collective bargaining process begins," unless the parties extend that time by written agreement.[17] At the point of impasse, either party may request

---

[11] *Id.* § 174.101.

[12] *Id.* § 174.103.

[13] *Id.* § 174.105(b).

[14] *Id.* § 174.107.

[15] *Id.* § 174.108.

[16] *Id.* § 174.105(c).

[17] *Id.* § 174.152.

to arbitrate unresolved issues once the parties have exhausted "every reasonable effort, including mediation," to settle all issues and the party seeking arbitration has provided written notice to the other party.[18] Neither party, however, is required to arbitrate.[19]

If a bargaining association properly follows the statutory prerequisites to request arbitration "and a public employer refuses to engage in arbitration," then "on the application of the association, a district court for the judicial district in which a majority of affected employees reside may enforce the requirements of Section 174.021 as to any unsettled issue relating to compensation or other conditions of employment of fire fighters."[20] If the court finds that the public employer has failed to comply with Section 174.021's compensation standard, it must:

> (1) order the public employer to make the affected employees whole as to the employees' past losses;
>
> (2) declare the compensation or other conditions of employment required by Section 174.021 for the period, not to exceed one year, as to which the parties are bargaining; and
>
> (3) award the association reasonable attorney's fees.[21]

Chapter 174 "preempts all contrary local ordinances, executive orders, legislation, or rules adopted by . . . [a] home-rule municipality"

---

[18] *Id.* § 174.153(a).

[19] *Id.* § 174.163.

[20] *Id.* § 174.252(a).

[21] *Id.* § 174.252(b).

7

like the City of Houston.[22] It also waives governmental immunity "to the extent necessary to enforce" its provisions against a public employer.[23]

**B**

The City of Houston adopted Chapter 174 for firefighter collective bargaining in 2003, but the last time the City reached a comprehensive agreement with the Houston Professional Fire Fighters' Association was in 2011. That agreement expired in 2017. The City and the Fire Fighters unsuccessfully attempted to reach a new agreement. In May 2017, the Fire Fighters wrote the City that the parties' negotiators had reached an impasse under Chapter 174's definition.[24] The Fire Fighters requested mediation and arbitration. The parties participated in a mediation that proved unfruitful, and the City declined to arbitrate.

The Fire Fighters then sued the City, alleging that the City failed to meet Chapter 174's firefighter-compensation standards. The Fire Fighters petitioned the trial court to declare their compensation and conditions of employment for one year pursuant to Section 174.252.

In its answer, the City denied that it had violated Chapter 174, and it claimed to be immune from suit. It challenged Chapter 174's judicial-enforcement provisions as unconstitutional under the

---

[22] *Id.* § 174.005.

[23] *Id.* § 174.008.

[24] *See id.* § 174.152.

8

nondelegation doctrine derived from the separation of powers clause in Article II, Section 1 of the Texas Constitution.[25]

The City sought summary judgment on its constitutional challenge, arguing that Chapter 174 improperly delegates compensation decisions to the judiciary without providing reasonable guidance. The City further argued that the trial court lacked subject-matter jurisdiction over the suit because Chapter 174 does not waive the City's governmental immunity. The Fire Fighters also moved for summary judgment, seeking the opposite declarations: that Sections 174.252 and 174.021 do not violate the Constitution and that Section 174.008 waives the City's immunity.

The trial court rejected the City's constitutional and immunity challenges, and it granted partial summary judgment to the Fire Fighters. The City appealed the denial of its jurisdictional plea as of

---

[25] *See* Tex. Const. art. II, § 1 ("The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy . . . and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."); Tex. Const. art. III, § 1 interp. commentary (West 2022) ("A settled maxim of constitutional law is that the power conferred upon the legislature to make the laws cannot be delegated by that department to any other body or authority. The essential legislative functions are by this section vested in the legislature and there they must remain."); *City of Pasadena v. Smith*, 292 S.W.3d 14, 17 (Tex. 2009) (observing that the nondelegation doctrine is "the Texas Constitution's restrictions on the delegation of governmental power"); *Proctor v. Andrews*, 972 S.W.2d 729, 733 (Tex. 1998) (observing that Article II, Section 1 "provides for the separation of powers of the three branches of the state government and prohibits any of the three departments from exercising any power properly attached to either of the other branches. Article II, Section 1 is a direct prohibition of the blending of the legislative, executive, and judicial departments.").

right,[26] and it sought and received permission to appeal the trial court's rejection of its constitutional challenge.[27]

The court of appeals affirmed in all respects.[28] It concluded that Section 174.021's standards, including the requirement that the City provide compensation to the Fire Fighters that is "substantially equal to compensation and other work conditions in comparable employment in the private sector" provided "sufficient guidance and parameters" for a court to apply.[29] The court of appeals also rejected the City's argument that it retained its governmental immunity.[30]

Meanwhile, the City's voters approved Proposition B, the pay-parity charter amendment.[31] The amendment seeks to require the City to set firefighter compensation commensurate with police officer compensation "in a manner and amount that is at least equal and comparable by rank and seniority with the compensation provided City police officers."[32] Upon the amendment's passage, the Houston Police Officers' Union sued both the City and the Fire Fighters to prevent the amendment's enforcement. Among other claims, the Police Officers sought a declaratory judgment that Chapter 174 preempts the

---

[26] *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8).

[27] 626 S.W.3d at 7–8.

[28] *Id.* at 23.

[29] *Id.* at 19–20 (emphases omitted).

[30] *Id.* at 13.

[31] *See* Tex. Loc. Gov't Code § 9.004 (providing charter-amendment election procedures).

[32] Hous., Tex., City Charter art. IX, § 24 (2023).

10

pay-parity amendment. The City agreed with the Police Officers that Chapter 174 preempts the pay-parity amendment; thus, the City also sought a declaratory judgment against the amendment's enforcement. The Fire Fighters counterclaimed, seeking a declaration that Chapter 174 does not preempt the pay-parity amendment.

The trial court granted summary judgment in favor of the City and the Police Officers, ruling that Chapter 174, as the governing state law, preempts the pay-parity amendment. The Fire Fighters appealed.

A divided court of appeals reversed.[33] In the court of appeals' view, Chapter 174 "does not prohibit the establishment of a compensation floor nor does it bar with 'unmistakable clarity' the consideration of other factors to determine fire fighter compensation."[34] The dissenting justice disagreed that the two standards were compatible, observing that Chapter 174 "requires one standard: comparable private sector compensation. The pay-parity amendment requires another standard: police officers' compensation."[35]

We granted review in both cases.

## II

We begin with the City's constitutional challenge. Article II, Section 1 of the Texas Constitution divides the powers of government "into three distinct departments," and prohibits each from exercising

---

[33] 651 S.W.3d at 58.

[34] *Id.* at 54.

[35] *Id.* at 59 (Wise, J., dissenting).

11

"any power properly attached" to a different department.[36] The Legislature, however, "does not violate the Constitution merely because it legislates in broad terms, leaving a certain degree of discretion to executive or judicial actors."[37]

The City argues that Section 174.252's judicial-enforcement provision improperly delegates legislative power to the judiciary by permitting courts to set firefighter compensation based on unreasonably vague standards.

In evaluating whether a statute is constitutionally infirm, we presume at the outset that it is constitutional.[38] A party challenging a statute as unconstitutional bears a heavy burden to overcome this presumption.[39] We give statutes a constitutional reading if one is feasible.[40]

## A

The City first contends that Chapter 174 is constitutionally infirm because it requires courts to establish compensation rather than

---

[36] Tex. Const. art. II, § 1; *see Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 600 (Tex. 2001) ("The separation of powers doctrine prohibits one branch of government from exercising a power inherently belonging to another branch.").

[37] *Touby v. United States*, 500 U.S. 160, 165 (1991). "[T]he general principles of constitutional law, as declared by . . . the Supreme Court of the United States, on the subject of delegation of legislative power, are applicable and may be examined in determining the meaning of our own constitutional provisions." *Trimmier v. Carlton*, 296 S.W. 1070, 1079 (Tex. 1927).

[38] *EBS Sols., Inc. v. Hegar*, 601 S.W.3d 744, 754 (Tex. 2020).

[39] *Id.*

[40] *Stockton v. Offenbach*, 336 S.W.3d 610, 618 (Tex. 2011).

12

simply to adjudicate a dispute about compensation under established rules. In the City's view, establishing compensation in the first instance is not a judicial task. Thus, it argues, Chapter 174's foundation is an abdication of legislative authority.

Under Chapter 174, however, the Legislature has provided a standard against which to judge the City's existing firefighter compensation: comparable private-sector employment. Contrary to the City's position, the role of establishing compensation under this standard in the first instance lies with the City. Before a court may adjudicate a compensation claim under Chapter 174, it must first find that the City's existing compensation framework fails to mirror comparable private-sector standards for the issues in dispute.[41] If the trial court finds that a public employer has not complied with Section 174.021's private-sector pay standards, and further that the parties have not reached a collective bargaining agreement or agreed to submit the dispute to arbitration, then the court shall "declare the compensation or other conditions of employment required by Section 174.021 for the period, not to exceed one year, as to which the parties are bargaining."[42]

In framing its constitutional challenge, the City ignores that Section 174.252 requires a court to evaluate the City's existing compensation structure to determine whether the City has complied with the statutory standard. A court does not declare compensation

---

[41] Tex. Loc. Gov't Code § 174.252(b) ("If the court finds that the public employer has violated Section 174.021, the court shall [enforce remedies].").

[42] *Id.* § 174.252(b)(2).

13

unless the City's existing compensation falls short of the statutory standard.[43] Because the statute provides a legislatively defined standard by which to assess the City's compensation structure and links judicial enforcement of that standard to an evaluation of the City's existing compensation, we reject the City's view that the judicial-enforcement mechanism requires the judiciary to establish compensation in the first instance.

**B**

The City next contends that the compensation standards in Sections 174.021 and 174.252 are so vague as to render their judicial application unconstitutional. The Fire Fighters respond that the statutes provide workable compensation standards and fair notice of those standards to the City.

Litigants frequently invoke the nondelegation doctrine in the administrative rulemaking context to challenge an agency's power to implement a particular regulation. Rarer are constitutional challenges to the judiciary's competence to enforce a statute. One court of appeals has observed that the nondelegation doctrine may call for a distinct analysis when applied to the judiciary as opposed to an administrative agency,[44] but no party contends that we should apply different standards in this case. Accordingly, we assume that the standards

---

[43] *Id.* § 174.252(a)–(b).

[44] *Tex. Bldg. Owners & Managers Ass'n v. Pub. Util. Comm'n of Tex.*, 110 S.W.3d 524, 535 n.10 (Tex. App.—Austin 2003, pet. denied).

governing analysis of the nondelegation doctrine in the administrative context may inform such an analysis in the judicial context.

When delegating authority, the Legislature must provide standards that are "reasonably clear and hence acceptable as a standard of measurement."[45] The Legislature need not, however, detail every rule for implementing that authority.[46] Because declaring a state law unconstitutional nullifies the Legislature's choices, courts find constitutional infirmity under the nondelegation doctrine "sparingly, when there is, in Justice Cardozo's memorable phrase, 'delegation running riot.'"[47]

Accordingly, our Court has "upheld standards which are quite broad."[48] For example, a delegation of authority to the Railroad Commission to "prevent waste and promote conservation" did not violate the separation of powers clause.[49] While we approved this delegation in the administrative rulemaking context, the principle holds in the adjudicatory context that broad standards may be appropriate when the Legislature cannot conveniently investigate that which it seeks to

---

[45] *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 741 (Tex. 1995) (quoting *Jordan v. State Bd. of Ins.*, 334 S.W.2d 278, 280 (Tex. 1960)).

[46] *Id.*

[47] *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 475 (Tex. 1997) (quoting *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 553 (1935) (Cardozo, J., concurring)).

[48] *R.R. Comm'n of Tex. v. Lone Star Gas Co.*, 844 S.W.2d 679, 689 (Tex. 1992) (quoting *State ex rel. Grimes Cnty. Taxpayers Ass'n v. Tex. Mun. Power Agency*, 565 S.W.2d 258, 273 (Tex. App.—Houston [1st Dist.] 1978, writ dism'd)).

[49] *Id.*

regulate,[50] or "cannot itself practically and efficiently exercise" its power to prescribe the details.[51]

Our Court rejected a challenge similar to the City's in *Key Western Life Insurance Co. v. State Board of Insurance*.[52] In that case, the Commissioner of Insurance exercised his authority to disapprove of a proposed insurance policy under a statute permitting the Commissioner to do so if the proposed policy "contains provisions which encourage misrepresentation or are unjust, unfair, inequitable, misleading, deceptive or contrary to law or to the public policy of this state."[53] Like the City in this case, the insurer in *Key Western* contended that the operative statutory provision was "so vague and grants such sweeping powers, unbridled by any standard or guides, that it results in an unconstitutional delegation of authority."[54] Our Court rejected that argument, observing that the United States Supreme Court had upheld similarly amorphous standards against separation of powers challenges.[55]

---

[50] *Id.*

[51] *Trimmier*, 296 S.W. at 1079 (upholding delegation of authority to set railroad rates).

[52] 350 S.W.2d 839 (Tex. 1961).

[53] *Id.* at 841 & n.1 (quoting Act of May 13, 1957, 55th Leg., R.S., ch. 501, sec. 1, 1957 Tex. Gen. Laws 1463, 1464 (repealed 2003)).

[54] *Id.* at 844.

[55] *Id.* at 845 (collecting such standards, including "'just and reasonable,' 'public interest,' 'unreasonable obstruction to navigation,' 'reciprocally unequal and unreasonable,' 'public convenience, interest, or necessity,' 'tea of inferior quality,' 'unfair methods of competition,' 'reasonable variations,' 'unduly or unnecessarily complicate the structure' of a holding company system or

Chapter 174 is no stranger to constitutional challenges based on the nondelegation doctrine, with two courts of appeals reaching opposite conclusions. In *City of Port Arthur v. International Ass'n of Fire Fighters, Local 397*, on which the Fire Fighters rely, the court of appeals held that Chapter 174's substantially identical predecessor statute did not run afoul of separation of powers principles.[56] The court reasoned that an aggrieved bargaining unit must show that its public employer's existing compensation framework failed to comply with the requirement for conditions of employment to be substantially equal to those in the private sector before a court can order compensation under the judicial-enforcement provision.[57] In its view, permitting "the court to apply whatever facts and figures were supplied by the evidence" to determine compensation "is unquestionably a judicial function."[58]

In contrast, the City relies on *International Ass'n of Firefighters, Local Union No. 2390 v. City of Kingsville*, which held the same predecessor statute unconstitutional under the nondelegation doctrine.[59] The court of appeals in that case viewed the judicial award of compensation under the statute as reflecting "a policy determination

---

'unfairly or inequitably distribute voting power among security holders'" (quoting *Jordan*, 334 S.W.2d at 281)).

[56] 807 S.W.2d 894 (Tex. App.—Beaumont 1991, writ denied).

[57] *Id.* at 898; *accord* Tex. Loc. Gov't Code § 174.252(b).

[58] *Port Arthur*, 807 S.W.2d at 898.

[59] 568 S.W.2d 391 (Tex. App.—Corpus Christi–Edinburg 1978, writ ref'd n.r.e.).

17

which is legislative in nature."[60] The City emphasizes the reasoning in *Kingsville*, arguing that Chapter 174's standards are "too subjective to prevent arbitrary and unequal application."[61]

The court of appeals' reasoning in *Port Arthur* is more persuasive. Chapter 174 does not impermissibly delegate legislative power to the judiciary. Instead, it is the "legislative creation of a cause of action against employers whose offers violate" the statutory standard for compensation.[62] As the court of appeals in *Port Arthur* observed, Section 174.021 expresses the Legislature's policy judgment that firefighters' employment conditions should mirror the private sector. Enforcing that standard in a given case does not impermissibly entangle the judiciary in legislative functions.

We have held that permissible delegations need not furnish every detail.[63] Section 174.021 provides more than a few comparators, including that:

- the compensation must be "*substantially equal* to compensation and other conditions of employment"

- "that prevail in *comparable employment* in the private sector"

- "based on *prevailing private sector compensation* and conditions of employment"

---

[60] *Id.* at 395.

[61] *Id.*

[62] *Port Arthur*, 807 S.W.2d at 898.

[63] *Lone Star Gas Co.*, 844 S.W.2d at 689 ("Requiring the legislature to include every detail and anticipate unforeseen circumstances in the statutes which delegate authority to the Commission would defeat the purpose of delegating legislative authority.").

18

- "in the *labor market area* in other jobs", and

- "that require the *same or similar skills*, ability, and training and may be performed under the *same or similar conditions*."[64]

Each emphasized term reflects the Legislature's selection of detailed comparative standards to account for circumstances affecting compensation and any adjustments for differences in them. Although subject to interpretation on the particulars, these standards are not so capacious as to authorize a court to decide for itself the conditions of firefighter employment.

Rather, the standards provide reasonable guidance to a court evaluating evidence that the parties may adduce in support of their competing compensation structures. These standards are less subjective than others that our Court has enforced over the decades, like the statutory authority to determine whether an insurance policy "encourages misrepresentation,"[65] whether an insurer's directors or officers are "not worthy of the public confidence,"[66] or whether a pipeline company is engaged in the "discriminatory production and taking of natural gas."[67] Section 174.021's directive that firefighter wages be set to comparable private-sector employment, together with other comparators, provides reasonable guidance to courts tasked with evaluating whether the City's current compensation meets the statute's standards.

---

[64] Tex. Loc. Gov't Code § 174.021 (emphases added).

[65] *Key W. Life Ins. Co.*, 350 S.W.2d at 845.

[66] *Jordan*, 334 S.W.2d at 280.

[67] *Lone Star Gas Co.*, 844 S.W.2d at 690.

The courts also routinely enforce compensation standards. Section 174.021's statutory standards are similar to the kind that courts regularly apply in employment disputes, for example. To prevail in an employment-discrimination case, plaintiffs must show that "they were treated less favorably than similarly situated members" outside the protected class.[68] In those cases, courts use comparators like those found in Chapter 174 to determine whether another employee is "similarly situated." In that context, we have held that "[e]mployees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct," though their circumstances need not be identical.[69] And to prove discrimination based on disparate employee discipline, the employees' misconduct must reflect "comparable seriousness."[70] In short, employment law commonly calls on courts to analyze whether a plaintiff's compensation or conditions of employment are substantially equivalent to another who

---

[68] *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005); *see* Tex. Lab. Code § 21.051 ("An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer: (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment[.]").

[69] *Office of Att'y Gen. of Tex. v. Rodriguez*, 605 S.W.3d 183, 198 (Tex. 2020); *see Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 486 (5th Cir. 2007) (further defining and analyzing "substantially equivalent" employment).

[70] *Monarrez*, 177 S.W.3d at 917 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)).

is similarly situated. Section 174.021's standards are based on well understood employment comparisons.[71]

Accordingly, we reject the City's constitutional challenge to Chapter 174's judicial-enforcement provisions.

## III

The City next contends that it is immune from a suit for judicial enforcement. Chapter 174 waives governmental immunity "to the extent necessary to enforce this chapter" against the public employer.[72] Governmental immunity defeats a trial court's subject-matter jurisdiction over a lawsuit; we review whether it applies as a question of law.[73]

The City asserts that the Fire Fighters failed to bargain in good faith because they did not propose particular private-sector standards during collective bargaining.[74] Section 174.105, however, does not

---

[71] We acknowledge the possibility that, in any given bargaining impasse, Chapter 174's standards may prove infeasible because the parties fail to adduce evidence of comparable terms of employment. We express no view on the proper outcome under such circumstances. We merely hold that Chapter 174, on its face, contains sufficiently detailed standards to guide courts in the performance of their judicial functions. On remand, the Fire Fighters should have the opportunity to adduce "substantially equal" comparator evidence.

[72] Tex. Loc. Gov't Code § 174.008.

[73] *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004).

[74] *See* Tex. Loc. Gov't Code § 174.252(a) (providing preconditions before a court "may enforce" the Act).

require the Fire Fighters to make such proposals. It instead requires the parties to:

(1) meet at reasonable times;

(2) confer in good faith regarding compensation, hours, and other conditions of employment or the negotiation of an agreement or a question arising under an agreement; and

(3) execute a written contract incorporating any agreement reached, if either party requests a written contract.[75]

Unlike the compensation standards that the statute requires a court to apply, the good faith provision does not require either party to negotiate based on a particular standard or agree to particular terms. Rather, the statute expressly recognizes that neither side must agree to a particular employment condition.[76] The City's argument about the required content of a negotiation lacks statutory support.

Further, Section 174.022 provides that a public employer is "considered to be in compliance with the requirements of Section 174.021," if the bargaining parties reach an agreement, regardless of the particular provisions of that agreement.[77] A collective-bargaining agreement need not incorporate private-sector standards to comply with Chapter 174.[78]

---

[75] *Id.* § 174.105(b).

[76] *Id.* § 174.105(c).

[77] *Id.* § 174.022(a).

[78] *See id.*; *see also id.* § 174.105(b) ("[T]he duty to bargain collectively means a public employer and an association shall . . . execute a written contract incorporating *any agreement reached*, if either party requests a written contract." (emphasis added)).

22

Instead, once the parties reach an impasse, Chapter 174's judicial-enforcement provision is triggered when two conditions are met: (1) the collective-bargaining association requests arbitration, listing the issues in dispute; and (2) the public employer refuses to engage in arbitration.[79]

The Fire Fighters met these prerequisites to judicial enforcement. They bargained with the City between March 14, 2017, and May 14, 2017, a period of sixty-one days.[80] On May 15, they wrote to the City to designate the unsettled issues and request arbitration. The City refused to arbitrate but acceded to mediation. The parties proceeded to an unsuccessful mediation. Only then did the Fire Fighters file suit.

We hold that the Fire Fighters satisfied Chapter 174's prerequisites to seeking judicial enforcement. Accordingly, the City's governmental immunity is waived for this suit.[81]

---

[79] *Id.* § 174.252(a).

[80] *See id.* § 174.152(a) (defining a bargaining impasse).

[81] *See id.* § 174.008 ("[Chapter 174] is binding and enforceable against the employing public employer, and sovereign or governmental immunity from suit and liability is waived only to the extent necessary to enforce this chapter against that employer.").

## IV

Finally, we address whether Chapter 174 preempts enforcement of the later-adopted local pay-parity amendment.

Whether a state statute preempts a local regulation is a legal question that a court reviews de novo.[82] In the case of a home-rule city, the Legislature must demonstrate its intent to preempt local law "with unmistakable clarity."[83] If the statute makes that legislative intent clear, then a local ordinance "is unenforceable to the extent it conflicts with the state statute."[84] The party seeking to avoid enforcement of a local law bears the burden of establishing that state law preempts it.[85]

Chapter 174 contains an express preemption provision, satisfying the City's burden to show the legislative intent to preempt local law with unmistakable clarity. Section 174.005 provides that the chapter "preempts all contrary" local ordinances or rules adopted by "a political subdivision or agent of the state, including a . . . home-rule municipality."[86] Further, the Texas Constitution provides that "no charter or any ordinance passed under said charter shall contain any

---

[82] *See BCCA Appeal Grp., Inc. v. City of Houston*, 496 S.W.3d 1, 7 (Tex. 2016).

[83] *Dall. Merch.'s & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 491 (Tex. 1993).

[84] *Id.*

[85] *Mo. Pac. R.R. v. Limmer*, 299 S.W.3d 78, 84 & n.30 (Tex. 2009).

[86] Tex. Loc. Gov't Code § 174.005.

provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State."[87]

We turn to whether Section 174.021's compensation standard is inconsistent with the pay-parity amendment. For three reasons, we conclude that it is.[88]

First, Section 174.002(a) expresses an overarching state policy with respect to collective-bargaining compensation: "The policy of this state is that a political subdivision shall provide its fire fighters . . . with compensation and other conditions of employment that are substantially the same as compensation and conditions of employment prevailing in comparable private sector employment." By providing a different compensation measure than comparable private-sector pay, the pay-parity amendment is inconsistent with Chapter 174's expressed policy for setting compensation according to private-sector employment standards.

Second, Section 174.103 provides that fire and police departments must bargain independently with their public employer unless they voluntarily join together.[89] The pay-parity amendment, however, requires the City to pay firefighters "the same base pay as persons of

---

[87] Tex. Const. art. XI, § 5(a).

[88] Given our disposition, we have no occasion to reach and express no view on whether the City's pay-parity amendment is void because it fails to comply with Section 141.034 of the Local Government Code.

[89] Tex. Loc. Gov't Code § 174.103(a) ("Except [when they voluntarily join], the fire and police departments of a political subdivision are separate collective bargaining units under this chapter.").

like seniority" as certain police officer classifications.[90] Given the required parallel compensation, the police officers' bargaining unit will effectively—and not necessarily voluntarily—represent the Fire Fighters at the bargaining table. As the Police Officers observe, the pay-parity amendment in practice forces the two associations to join in bargaining for compensation terms, despite Section 174.103's prohibition of this arrangement in the absence of their consent.

Third, Section 174.021 provides a specific compensation standard for claims for judicial enforcement which conflicts with the pay-parity amendment. The two rules of decision provide different measurements, using different inputs.[91]

Section 174.021 measures firefighter compensation according to comparable private-sector pay and conditions of employment. The pay-parity amendment requires that certain firefighter classifications "receive the same base pay as persons of like seniority" employed as police officers, regardless of comparable private-sector pay.[92]

The two rules of decision cannot be reconciled.[93] If comparable private-sector compensation is less than police officer compensation,

---

[90] Hous., Tex., City Charter art. IX, § 24 (2023).

[91] *Compare* Tex. Loc. Gov't Code § 174.021(1) (requiring a city to pay compensation to firefighters that is "substantially equal to compensation . . . that prevail[s] in comparable employment in the private sector"), *with* Hous., Tex., City Charter art. IX, § 24 (2023) (establishing equivalent ranks between firefighters and police officers that "shall receive the same base pay").

[92] Hous., Tex., City Charter art. IX, § 24 (2023).

[93] *See City of Laredo v. Laredo Merchs. Ass'n*, 550 S.W.3d 586, 593–94 (Tex. 2018) ("The [preemption] issue is whether the Ordinance falls within the

then the pay-parity amendment contravenes Chapter 174 by mandating that the City pay its firefighters more than the statute prescribes. Chapter 174 establishes compensation for judicial-enforcement purposes solely by reference to private-sector employment, not any other.[94]

The court of appeals determined that the two measurements might converge for a particular employee on occasion.[95] We reject the notion, however, that a hypothetical convergence of two different measurements saves a local regulation from preemption when it otherwise requires courts to apply incompatible rules of decision.

Two cases inform this outcome. In *BCCA Appeal Group, Inc. v. City of Houston*, our Court considered whether the Texas Clean Air Act preempted the City of Houston's air-quality ordinance.[96] The state law provided air-quality standards and empowered the Texas Commission

---

Act's ambit. To decide that, we look, as usual, to the statutory text and the ordinary meanings of its words." (footnote omitted)).

[94] *See City of San Antonio v. Int'l Ass'n of Fire Fighters, Local 624*, 539 S.W.2d 931, 935 (Tex. App.—El Paso 1976, no writ) ("The Act specifically provides that the standard by which firemen's wages are to be determined is by reference to private sector employment. Thus, it excludes the wages paid in public sector employment, including other City employees.").

[95] 651 S.W.3d at 54 ("[D]epending on the context of their application, section 174.021 and the pay-parity amendment can both apply to determine fire fighters' compensation.").

[96] 496 S.W.3d 1 (Tex. 2016).

on Environmental Quality to enforce them.[97] Like Chapter 174, the Clean Air Act preempts inconsistent ordinances.[98]

In *BCCA,* the City sought to avoid preemption and to enforce its locally enacted air-quality regulatory regime.[99] Our Court held that the Clean Air Act preempted the local ordinance because the local "enforcement provisions *authorize* the City to enforce the state's air-quality standards in a manner that is inconsistent with the statutory enforcement provisions."[100] We rejected the argument that hypothetical convergence of the two enforcement regimes saved the ordinance from preemption. That the City might choose to enforce its ordinance "in a way that does not violate the statutory requirements,"[101] did not mean that the ordinance was consistent with state law. As a result, we declined to "invalidate the enforcement provisions of the Ordinance only 'to the extent' that they will be inconsistent."[102] Local regulations that authorize enforcement based on standards that are inconsistent with a statutory standard are not saved from preemption merely because some applications produce consistent results.

The Court of Criminal Appeals reached a similar conclusion in a case analyzing whether a statute governing motorist speed preempted a

---

[97] *Id.* at 9–10.

[98] Tex. Health & Safety Code § 382.113(a).

[99] *BCCA Appeal Grp.*, 496 S.W.3d at 5.

[100] *Id.* at 16 (emphasis added).

[101] *Id.* at 17.

[102] *Id.* at 18.

city's speed ordinance.[103] The statute prohibited motorists from driving faster than "reasonable and prudent" under the circumstances.[104] In holding the local ordinance preempted, the court concluded that a local ordinance was unenforceable because "contrary to the statute, [it] set a rigid speed limit of 30 miles per hour (unless otherwise posted)."[105] This was the result even though a "reasonable and prudent" speed frequently may have been thirty miles per hour on a given street.

Local regulations are preempted when they prescribe a governing rule that is inconsistent with a state statute's standards, even if enforcement of the local law might hypothetically result in the same outcome as enforcement of the statute. A court enforcing Chapter 174 may happen to reach a result consistent with the pay-parity amendment. In such cases, no inconsistency exists.[106] The pay-parity amendment, however, never functions as the governing rule of decision in such an instance because it can never force a result different from that which Chapter 174 compels.[107] Local regulations are not "ancillary

---

[103] *Abrams v. State*, 563 S.W.2d 610 (Tex. Crim. App. [Panel Op.] 1978).

[104] *Id.* at 615.

[105] *Id.*

[106] *See Laredo Merchs. Ass'n*, 550 S.W.3d at 593 ("[I]f the general law and local regulation can coexist peacefully without stepping on each other's toes, both will be given effect or the latter will be invalid only to the extent of any inconsistency.").

[107] In other words, the Act and the pay-parity amendment cannot "coexist peacefully without stepping on each other's toes." *Id.*

to and in harmony with" state statutes when they prescribe a different rule of decision that coincidentally converges with the statutory rule.[108]

* * *

We hold that Chapter 174's judicial-enforcement provision does not violate the Texas Constitution's separation of powers clause. We further hold that Chapter 174 waives the City's immunity from the Fire Fighters' suit for judicial enforcement. We therefore affirm the judgment of the court of appeals in favor of the Fire Fighters in appellate cause numbers 14-18-00976-CV and 14-18-00990-CV. We remand that case to the trial court for further proceedings on the Fire Fighters' claim for judicial enforcement under Chapter 174's compensation standards.

We further hold that Chapter 174 establishes the standard for judicial enforcement of firefighter compensation to the exclusion of local law, including the pay-parity amendment. Accordingly, we reverse the judgment of the court of appeals in appellate cause number 14-19-00427-CV and render judgment in favor of the City of Houston and the Houston Police Officers' Union.

Jane N. Bland
Justice

**OPINION DELIVERED:** March 31, 2023

---

[108] *City of Brookside Village v. Comeau*, 633 S.W.2d 790, 796 (Tex. 1982).